73 So.2d 616 (1954)
SULLIVAN
v.
LOCKE.
No. 8152.
Court of Appeal of Louisiana, Second Circuit.
June 25, 1954.
Rehearing Denied July 16, 1954.
*617 Booth, Lockard & Jack, Shreveport, for appellant.
O. E. Price, Bossier City, Browne, Browne & Bodenheimer, Shreveport, for appellee.
AYRES, Judge.
This action results from an intersectional collision between plaintiff's Hudson automobile and defendant's jeep, occurring at approximately 5:15 P.M. December 9, 1952, at the intersection of Barksdale Boulevard and Hamilton Lane in Bossier City.
Claiming that the accident was due solely to the negligence of the defendant, plaintiff sought recovery of the damages to his automobile in the sum of $418.15. Defendant denied the charge of negligence and averred that the accident was caused solely by the negligence of plaintiff's wife as the driver of the car and reconvened *618 for damages to his jeep, stipulated to be $174.83, and, in the alternative, pleaded contributory negligence on the part of plaintiff's driver. From a judgment in plaintiff's favor for the amount sued for, defendant prosecutes this appeal.
The record reveals that Barksdale Boulevard, a main four-lane thoroughfare, runs generally east and west and intersects at right angles Hamilton Lane, a two-lane street, running generally north and south. Both streets are hardsurfaced streets. Traffic is controlled by a conventional overhead automatic signal light, suspended above the center of the intersection. With an adverse light for traffic on Barksdale Boulevard, approximately seven or eight automobiles headed east, in the traffic lane immediately adjacent to the center line of the street, had stopped, with the lead car at the west side of the intersection. Plaintiff's wife as the driver of the Hudson automobile, also proceeded east in the southernmost lane of traffic and in the lane immediately to the right of the aforesaid line of cars, with the intention to proceed straight ahead across the intersection.
Defendant, driving his jeep, was accompanied by Mr. and Mrs. F. H. Horton and their small child, who was apparently critically ill from poison and whom they were taking to the hospital. Defendant was proceeding west on Barksdale Boulevard in the traffic lane immediately to his right of the center line of the street. It was his intention to make a left turn into Hamilton Lane. There is a dispute as to whether the signal light was red or green for defendant as he approached the intersection and as to whether or not he stopped to await a favorable signal. Notwithstanding a statement signed by him following the accident, the evidence preponderates that he did stop. Before entering the intersection and before proceeding with the left turn, he waited to ascertain if the head car of the line of cars referred to hereinabove would afford him the opportunity of making the left turn before such line of cars proceeded, and on ascertaining that fact, he then proceeded with the left turn, passing, however, according to our appreciation of the evidence, to the left of the center of the intersection, thereby "cutting the corner". When his jeep had arrived at the southernmost lane of traffic of Barksdale Boulevard, the collision occurred with plaintiff's Hudson. The Hudson struck the right front of the jeep, reversing its course and heading it back eastward, in which direction it proceeded some sixty to seventy feet after the impact which was sufficient to crack the motor and spill the oil of the jeep. The Hudson came to rest upon the curb at the southeast corner of the intersection.
When an intersectional collision occurs between two motor vehicles and the operators thereof charge each other with negligence, it is logical and expedient to first analyze the actions of the litigant who initiated the suit, or the actions of the driver of his car, because there could be no recovery if the driver and operator of plaintiff's car, by the exercise of due diligence and reasonable care, could have avoided the accident. Therefore, we shall first consider the evidence with respect to the actions of plaintiff's wife, the driver of his car at the time of the accident.
After Mrs. Sullivan stated that as she approached the intersection in the southernmost lane, of which she had a clear view, the traffic light turned green when she was two or three car lengths from the intersection, she testified:
"Q. Did you observe any vehicles in the northernmost lane? A. Yes.
"Q. as you approached the intersection? A. Yes, I observed six or seven vehicles.
"Q. Were they traveling real slow, or about stopped? A. They were about stopped.
"Q. What reason did you think at that time these vehicles were stopped for? A. Probably the first man would make a left turn, or they were waiting for the light to change green.
"Q. Was the light red when you approached it? A. The light was *619 green when I approached the intersection.
"Q. Were you looking straight ahead of you? A. I was looking straight ahead of me, in front of the car straight ahead, as I approached the intersection.
"Q. Did you see the jeep vehicle driven by the defendant, Mr. Locke, prior to the time that you entered the intersection? A. No, I never saw the jeep prior to the intersection.
"Q. Did you see the defendant, Mr. Locke, make any hand signals? A. No. I didn't see Mr. Locke, or the jeep, at any time.
"Q. Until it struck your vehicle? A. Until it struck my vehiclethat's the first time I'd seen it.
"Q. Did you apply your brakes? A. No, I didn't apply my brakes because I never saw him.
"Q. Approximately how many cars were there? A. Approximately six or sevenI didn't count them, but approximately.
"Q. Now, the lead car in that lane of traffic was at a standstill? A. Yes.
"Q. And there were some six or seven cars traveling in the same direction with you in the lane just to your left? A. They weren't traveling with me, they were there when I reached the intersection.
"Q. They were pointed and headed, though, in the same direction you were? A. The same direction, ahead of me.
"Q. And they were in the lane immediately to your left? A. Yes.
"Q. And with those six or seven cars stopped, and the leading car stopped at the intersection, you, nevertheless, continued to pass all six or seven of those stopped cars on their righthand side, did you not? A. I wasn't passing those cars, I was going down the street. I had the right of way and I wasn't passing. I never was in that other lane to begin with, so I couldn't be passing those cars.
"Q. Nevertheless, as you moved on, you passed them by on your left, did you not? A. Yes, I did.
"Q. You passed six or seven of them, did you not? A. Yes.
"Q. And they were stopped? A. Yes.
"Q. Well, with that lead car stopped at the intersection, didn't it occur to you that there was some reason why the car was stopped? A. It occurred to me he could have been trying to make a left turn, or he was waiting for the light to turn green.
"Q. If it occurred to you that he was getting ready to make a left turn didn't it occur to you that someone from the opposite direction might likewise be making a left turn? A. It always occurs to me when I'm going through an intersection there might be someone making a left turn; but I was traveling at a slow speed, and that man making a left turnI always rely on that man to be careful of other cars coming in the other direction.
"Q. You had the right of way? A. I had the right of way, and was going slow. I couldn't see if that man was coming or making a left turn, because I couldn't see, with those other cars.
"Q. Well, when the front of your car got up even with the entrance to the intersection, you could certainly see, couldn't you? A. No, I was looking straight ahead, that way, I wasn't looking on that side.
"Q. Why didn't you look to your left front, Mrs. Sullivan? A. Because I always look to the right of meI always look in front of meI neverI look all over naturally, but *620 I was just looking straight ahead, at the time.
"Q. So you didn't look to your left front, at any time? A. Oh, I wouldn't say at any time, but I wasn't looking at that
"Q. I mean at that time? A. At that time no, I wasn't looking that way.
"Q. Why didn't you look that way? A. I was looking straight ahead.
"Q. Well, why didn't you look to your left front to see if any car coming from the opposite direction might turn? A. Because at the moment I was looking straight ahead.
"Q. But why didn't you look to your left front to see if any car might be turning left from the opposite direction? A. I told you I was looking straight ahead. Perhaps I was looking on the rightbecause my children were on the rightperhaps that's why, but I wasn't looking that way."
Attempting to account for her not seeing defendant's vehicle in his effort to make a left hand turn, she further stated:
"Well, I didn't see him, probably, because he made that turn up ahead of me. I mean, if he had stopped there and waited a long time, and had made that turn, I certainly would have stopped had I seen him; but I didn't see him, because he hit me right here (indicating on sketch) and he should have seen me as he was making that turn."
Had Mrs. Sullivan been keeping a proper lookout and giving even casual attention to the traffic situation at the intersection, she would have, and could have, seen the jeep diagonally across the intersection and as it was turning to its left beyond the signal light, and, at her rate of speed, she could have, and no doubt would have, applied her brakes and stopped her car and avoided the collision. As full proof of her nonobservance of the situation and of the traffic at the intersection, it is unnecessary to look beyond her own testimony that she never at any time saw the jeep until the actual collision
There was no reason shown why she could not have seen defendant's jeep and taken effective means of preventing the accident. Whatever the operator of a motor vehicle can see, he must see, and in legal contemplation he does see. His failure to see what he could have seen by the exercise of due diligence does not absolve him from liability.
It is plaintiff's contention, however, that she had the right of way; that her right and privilege were superior to and outrank that of the defendant in attempting a left turn at the intersection; but, nevertheless she was not relieved of the duty of making proper observations. In fact, plaintiff's driver was placed on guard by the stoppage of the cars to her left; she knew they stopped for some purpose, notwithstanding, she proceeded across the intersection without looking to her left or ascertaining whether or not other traffic had entered or was about to enter the intersection. Applicable here is the statement appropriately made in Johnson v. Item Company, 10 La.App. 671, 121 So. 369:
"Even when one has the right of way, he is not relieved from the necessity of looking into the direction from which others may be expected to approach, and where such care would, as is the case here have prevented the accident, he who fails to look cannot recover, even though the other party was grossly at fault."
This court very properly stated in Prudhomme v. Continental Casualty Co., 169 So. 147, 152:
"The superior privilege of right of way does not confer license to disregard fundamental rules instituted for the protection and safety of persons motoring on public highways. The privilege does not warrant the assumption on the part of its possessor *621 that every other person is going to recognize such right under all circumstances. He is not justified, because of such superior right to heedlessly and carelessly drive his car at a rapid speed into and over road crossings and intersections, without due regard for the rights of those who may or may not be observing the traffic laws. A motorist is presumed to see that which he could have and ought to have seen.
"`Motorist having right of way at intersection is not thereby relieved of duty of maintaining adequate lookout.' Holderith v. Zilbermann (La.App.), 151 So. 670; Murphy v. Star Checker Cab Company (La.App.), 150 So. 79; Pugh v. Henritzy (La.App.), 151 So. 668; Johnson v. Item Company, 10 La. App. 671, 121 So. 369; Hamilton v. Lee (La.App.), 144 So. 249."
It was also held in Transcontinental Ins. Co. v. Toye Bros. Yellow Cab Co., La.App., 55 So.2d 585, 587, and in Kerschner v. Blache, La.App., 52 So.2d 749, that when an intersectional collision occurs between two automotive vehicles and the operators thereof charge each other with negligence there could be no recovery by the litigant who initiates the suit, if that party, by the exercise of due diligence and reasonable care could have avoided the accident.
Although Mrs. Sullivan's view may have been obstructed before her approach to the intersection by the line of cars to her left, it was not so immediately prior to and at the time she did so. However, should her view have been obstructed, it would have been her duty to use extra precaution commensurate with the danger and to have the car under such control, without regard to the question of superiority of right of way, and to keep a vigilant and constant lookout so as to be able to stop her car quickly in an emergency. The principle referred to has been lately recognized by this court in the case of New Hampshire Fire Ins. Co. v. Bush, 68 So.2d 254, 256, wherein the court said:
"Appellants' defense rests upon the generally accepted rule that where a motorist enters an intersection under the protection of being on a favored street or facing a favorable light, it is negligence to fail to notice another vehicle, moving in violation of the traffic right of way. In recognition of this principle our courts on several occasions have held that even the protection of a favorable light does not relieve the operator of a vehicle from all obligation, and that such a driver should see what any ordinary prudent person would see, and should act as an ordinary prudent person should act. * * *
"The foregoing principle, however, has application only where it appears the circumstances are such that a person exercising only slight care would have noticed the other vehicle and where it appears also that had the other vehicle been noticed it would have been apparent to the operator of the favored vehicle that the operator of the other car either could not or would not stop. This is said to mean that a strict or an extraordinary obligation is not placed upon a favored operator but notwithstanding his position he may not blindly proceed into obvious danger which even one exercising slight care would have noticed and would have avoided. * * *" See also the authorities therein cited.
It is not placing a strict or an extraordinary obligation upon a motorist on a right of way street to exercise a mere slight care and precaution in observing approaching traffic, and where plaintiff's driver did not at all look for approaching traffic, but merely straight ahead and did not see that which was there for her to see, she did not exercise the slightest care in that regard.
In Thomas v. Roberts, La.App., 144 So. 70, it was held that a motorist who drove into an intersection without looking for the approach of other vehicles and was struck by a truck that entered the intersection at excessive speed against a red light in violation *622 of city ordinance, was contributorily negligent, precluding recovery.
The Supreme Court also appropriately stated in Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 294:
"It can not and will not be disputed that a motorist, who recklessly and without exercising some degree of caution enters an intersection on a favorable light, is not free from negligence if he collides with another motorist who enters an intersection on an unfavorable light. And it can not and will not be disputed that a motorist can not, in the face of imminent danger, rely upon the right of way accorded him by law."
Under a traffic light system the dangers at street intersections are less than if there were no such signals, and, therefore, as the danger decreases, less care is exacted, but as the traffic light signal does not do away with all danger at intersections, all care and precaution are not dispensed with.
We are not justified in holding that plaintiff was not under some duty and responsibility of making some, even though slight, observations at the intersection, especially in view of the fact that she knew that the line of traffic to her left was halted for some reason, which was sufficient to place her on guard.
Plaintiff cites, and the lower court evidently relied upon, the case of Samples v. Strait, La.App., 36 So.2d 856. That case is readily distinguishable from the case now before us on a factual situation. It is sufficient to observe here, however, in that case, although plaintiff did not look in either direction before entering the intersection, his failure, in that respect, was unimportant because, had he looked, he would not have apprehended any condition out of the ordinary that would have produced any belief of danger for him to continue in his travel.
Mrs. Sullivan, for whose acts plaintiff is responsible, she being upon an errand or mission for the community of which he is head and master, was contributorily negligent.
Were it not for defendant's reconventional demand, it would be unnecessary to discuss the negligence charged to him. Defendant, on cross-examination, testified:
"Q. Did youbefore you made the left turn, did you have a clear view of the right-hand or southernmost lane of approaching traffic? A. No, this car that was parked, waiting for me, would block my view or the view from any other car
"Q. You did not have a clear view of the approaching traffic in the southernmost lane? A. That's right.
Defendant considered his mission, carrying an unconscious child with his parents to a clinic, was an emergency, and he was evidently in a hurry. In the face of an obstructed view, he proceeded to make a left-hand turn. On this point he testified:
"Q. Was your view of the southernmost lane of Barksdale Boulevard impeded? Could you see the southernmost lane? A. No. That car that was waiting for me had it blocked.
"Q. You did not know whether there were any cars coming on that southernmost lane, or not, when you started your turn, did you, Mr. Locke? A. No, I didn't.
"Q. You figured you would go ahead and try to make the turn regardless? Is that correct, Mr. Locke? A. Well, I figured that since this automobile was waiting for me that that should automatically close that lane on that right-hand side over there.
"Q. There could have been ten cars coming on that other laneyou didn't know, huh? A. That's right.
"Q. But you went ahead and made the turn. No horn? Nothing but a left-hand signal? A. That's right.

*623 "Q. And you turned to the left, Mr. Locke, before you got to the traffic light, didn't you? A. Just before, yes, sir.
"Q. Consequently, when you made your turn, you crossed in the east half of the intersection? A. I guess I did, yes, sir."
It is undisputed that defendant "cut the corner" in violation of the statutory requirement that he pass beyond the center of the intersection before turning his vehicle to the left, and that he did not make proper observation as to the approach of oncoming traffic in the southernmost lane. He did not see the Hudson automobile until just an instant before it struck his jeep. He had the same opportunity to see plaintiff's automobile as plaintiff's driver had of seeing his jeep. What was said concerning her failure in that respect applies equally as well to him. LSA-R.S. 32:236 provides:
"The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, * * *".
Defendant's actions show a clear violation of this statutory duty. The jurisprudence is replete with authorities that the operators of motor vehicles who desire to make left turns carry the responsibility of being certain that the movement can be made in safety and, therefore, without danger to normal overtaking or oncoming traffic. See McBroom v. Chavis, La.App., 62 So.2d 177, and the authorities therein cited. See also Samples v. Strait, supra.
The situation here was such as to require defendant to exercise the utmost caution. Defendant did not ascertain the way was clear for the movement attempted by him. He was aware that Barksdale Boulevard was a main thoroughfare, and between the City of Shreveport and Barksdale Field the traffic was unusually heavy at that hour. Such were additional reasons sufficient to put defendant on notice of the likelihood of traffic in the southernmost lane. Nevertheless he proceeded to make a left turn without keeping a proper lookout.
Defendant's negligence was a proximate cause of the accident, but Mrs. Sullivan was contributorily negligent. Hence, neither plaintiff nor defendant is entitled to recover.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff's demands be rejected and his suit dismissed at his costs.
Reversed and rendered.