AYRES, Judge.
Plaintiff by this action seeks to recover from L. G. Powell, Charles D. Powell and the Fidelity Mutual Insurance Company, Powell’s public liability insurance carrier, damages for personal injuries allegedly sustained in an automobile collision of April 30, 1955, at the intersection of Youree Drive Extension and East Olive Street in the City of Shreveport.
From a judgment in accordance with a jury verdict rejecting his demands, plaintiff has appealed devolutively to this court.
The determining factors in this litigation are primarily factual. For a proper understanding of the issues, the locale or the scene of the accident will first be described. Youree Drive Extension is a four-lane main thoroughfare and forms a segment of State Highway One and runs in a general north and south course. This highway is *463 constructed of concrete pavement of two double lanes of a width of 26 feet each, separated by a neutral ground having a width of 32 feet. Alongside and extending most of the distance of this extension are local or secondary roads. Traffic on this highway is very heavy. The speed limit is 45 miles per hour. One of the streets intersecting Youree Drive Extension is East Olive, which generally takes an east and west course. Although traffic at this intersection was uncontrolled so far as concerns automatic control signals, “stop” signs were posted on East Olive against traffic entering said thoroughfare. All traffic, therefore, was required to come to a stop before entering upon Youree Drive Extension, which was accorded right of way by statutory regulations.
On the occasion of the accident involved, occurring at approximately 4:45 P. M., plaintiff was driving a Jeep station wagon west on East Olive Street towards Youree Drive Extension with the intention of crossing and continuing westward on East Olive Street. Charles D. Powell, minor son of L. G. Powell, was driving a Bel Aire Chevrolet in a southerly direction on You-ree Drive Extension. A collision occurred between plaintiff’s Jeep and defendant’s Chevrolet at a point slightly west of the center of the southbound traffic lanes of Youree Drive Extension.
Plaintiff’s contention is that Charles D. Powell was guilty of negligence proximate-3y causing the accident, especially in failing to maintain a proper lookout and to yield the right of way to plaintiff, in traveling at an excessive rate of speed, and, finally, in failing to avail himself of the last clear chance to avoid the accident. Defendant’s position is that Powell was not guilty of negligence but that plaintiff was guilty of negligence proximately causing said accident, or, in the alternative, contributory negligence in attempting to cross a preferential street when it was unsafe to do so, and in failing to keep a proper lookout.
From our appreciation of the evidence and review of the record, we are not convinced that Charles D. Powell was guilty of negligence constituting a proximate cause of the accident. To the contrary, it is established by a preponderance of the evidence that plaintiff was guilty of negligence constituting the proximate cause of the accident.
On the question of liability, the testimony of three witnesses, in addition to that of his own, was offered by plaintiff. These witnesses were Gracie Harper, K. P. Moore and Tommy Pineset. Plaintiff repudiated the testimony of the first two. Gracie Harper testified that while sitting on her front porch she saw the events leading up to and including the accident itself; that, after plaintiff’s Jeep and the bicycle of Tommy Pineset had reached the neutral ground, she saw two automobiles approaching from the north, one behind the other but some distance apart; also, that the first of these slowed down and permitted the bicycle to cross Youree Drive Extension. After the passage of the first car, the second followed and the collision occurred in the intersection between it and plaintiff’s vehicle. According to her testimony, the bicycle had traveled 50 feet across the street when the accident occurred. K. P. Moore, who was standing on the south side of East Olive Street near the intersection awaiting an opportunity to cross Youree Drive, opined “Well, I’ll get across after a while”. Moore testified that he saw the Jeep stopped in line with the neutral ground and in a place of safety and that the collision occurred when plaintiff drove out into the southbound lanes of the highway. The witness saw the approach of the Chevrolet coming down an incline “drap-pin’ off the hill”, and expressed an opinion that had the' Chevrolet slowed down, the plaintiff could have made a successful crossing of the intersection. He could not testify that the Chevrolet exceeded the usual speed of vehicles generally on this highway.
Gracie Harper was of the opinion the Chevrolet- increased its speed as it approached the intersection. She stated: “When it squatted to the ground to make high speed is when it struck, * * * and I see the blue smoke flew from the *464 muffin (sic) pipe. And that just Mewed his station wagon into the far gravel lane, and pushed it right into that sign-post and that’s what kept it from turning bottom-upwards.” Later, she testified she heard the squeaking of the brakes and the skidding of the tires when young Powell was slowing and attempting to stop to avoid the collision. This witness’s testimony was repudiated by the plaintiff as untrue.
Therefore, the only evidence to establish the fact that plaintiff attempted the crossing when time, space and opportunity permitted him to do so safely rests upon the testimony of Tommy Pineset. Reading of his testimony indicates that it is uncertain and indefinite. As plaintiff’s vehicle pulled alongside him in the neutral zone, Pineset, on his bicycle, proceeded ahead of the Jeep and by speeding his bicycle was enabled to successfully cross ahead of the approaching car. He was, according to his testimony, 12 feet beyond the intersection when he heard the crash. He, therefore, did not see the collision itself. Pineset could not estimate the speed of the Chevrolet but was of the opinion it was traveling more than 45 miles per hour, judging by the sound of the “racing of the Chevrolet motor”.
Plaintiff’s version of the occurrence is that when he approached the intersection he stopped first before entering the intersection with the secondary road and then before entering the intersection with the northbound traffic lanes of Youree Drive Extension; that this action was repeated as he entered the space south of the neutral ground and as he approached the intersection with the southbound traffic lanes. That Carlson stopped before he entered the latter intersection was denied by Powell, who testified that Carlson was driving slowly across the highway and further slowed his vehicle on reaching the neutral ground, leading him to believe that he, Carlson, was going to stop.
Charles E. Murray and Gary Babb were also driving south on Youree Drive Extension about 50 yards behind the Powell Chevrolet. These two parties say they, as well as Powell, were traveling 35 to 40 miles per hour. They denied that plaintiff stopped before entering the aforesaid intersection but testified that plaintiff, on entering the intersection, accelerated his speed in an attempt to beat the Powell car across the intersection, at which time Powell applied his brakes as he went into a “panic stop”, explained as an emergency stop produced by a sudden application of brakes, locking the wheels of the vehicle. In the impact, the front of the-Powell car struck the right front side of the Jeep, both swerving to the right and coming to rest off the pavement at the southwest corner of the intersection.
Carlson’s testimony as to whether he looked to his right for approaching traffic is most inconclusive and unsatisfactory. He disclaims any recollection of seeing a car approaching from that direction. He recalls entering the intersection after he should have looked and made certain that he had an opportunity to negotiate the crossing without unreasonably obstructing the usual and normal traffic upon said through-highway. After reaching the intersection, he suffered, according to his testimony, a mental “blackout”, after which he claims to have known nothing until after the occurrence of the accident. Thus, upon a crucial point in the case, that is, whether or not he looked and made certain of his opportunity to negotiate the intersection before entering thereon, plaintiff has no recollection.
The proof in the record is entirely insufficient to justify a conclusion that young Powell was speeding or that he failed to keep a proper lookout. No other conclusion can be reached from the evidence other than that plaintiff failed to look to his right and observe the approach of traffic from that direction, particularly the Powell car and the car preceding it. The jurisprudence is too well settled to require citation of authority that plaintiff is charged with seeing what he should have seen. His responsibility is measured by the rules as if he had actually seen the approaching car. Notwithstanding, however, he projected his vehicle into the intersection without regard not only to the rights and safety of *465 others hut without regard to those of his own. When an intersectional collision occurs between two motor vehicles and the operators thereof charge each other with negligence, there can be no recovery by the party instituting an action for damages as a result thereof if that party, by the exercise of due diligence and reasonable care, could have avoided the accident. Martin v. Adams, La.App., 88 So.2d 476; Kerschner v. Blache, La.App., 52 So.2d 749; Transcontinental Ins. Co. v. Toye Bros. Yellow Cab Co., La. App., 55 So.2d 585; Sullivan v. Locke, La.App., 73 So.2d 616.
We are of the opinion that the accident was caused entirely by the fault of plaintiff in failing to maintain a proper lookout and to accord to defendant’s car the right of way to which it was entitled. It was the duty of plaintiff to stop before entering the intersection with the southbound traffic lanes of the highway and await the passage of vehicles approaching the intersection at approximately the same time and permit them to proceed on their way. This plaintiff failed to do. When two vehicles approach an intersection at approximately the same time, the one having priority of right of way is entitled to proceed and it is culpable negligence for the other to attempt to cross. Belden v. Roberts, 3 La.App. 338; Arena v. Morris & Co., 14 La.App. 563, 130 So. 565.
• It was held in Simpson v. Pardue, 15 La.App. 341, 131 So. -854,. that the primary duty of avoiding ah ..intersectional collision rests upon the njotorist approaching on the less favored street. He is required- to -keep a lookout for vehicles on the favored street. He is also required to keep his car under control and to exercise a higher degree of care and caution than a driver on a favored street, who may be justified from the circumstances, as was plaintiff here, in assuming that the driver of a vehicle approaching an intersection from an inferior street would yield the right of way to a motorist using the favored street. Ciolina v. Patton, La.App., 148 So. 729. It was also held in Butler v. O’Neal, La.App., 26 So.2d 753, that when the negotiation of an intersection involves the passage across a favored thoroughfare the obligation of unusual care and caution upon the driver of vehicles on less favored thoroughfares should be enforced. See also Dixon v. Futch, La.App., 166 So. 205, and Williamson v. State Farm Mutual Automobile Ins. Co., La.App., 84 So.2d 243.
Plaintiff’s contention that he preempted the intersection is without merit. As was stated in Martin v. Adams, supra, the pre-emption of an intersection does not necessarily mean a mere prior entry in point of time or by a matter of a few feet ahead of another vehicle. To constitute a pre-emption an entry of an intersection must be made with the reasonable expectation on the part of the operator of a motor vehicle to clear the same without the obstruction of other vehicular traffic operating under normal and reasonable circumstances and conditions. Where an .entry is made under conditions and circumstances as to require emergency action on the part-of the drivers of other motor vehicles operating under normal conditions, such entry could not be said to constitute a pre-emption of the intersection. . ,
Plaintiff cites and relies upon Wilson v. Williams, La.App., 82 So.2d 71. That case is distinguishable from the present in that the driver of the vehicle on the favored street was proceeding at a reckless and excessive rate of speed. It was there held that plaintiff’s failure to see the oncoming traffic on the favored street did not constitute a proximate cause of the accident because inasmuch as, under the circumstances, had she seen its approach she would have been entitled to proceed into the intersection, which she would have had time to complete had the approaching car been operated at a reasonable and lawful speed. The defendant in the instant case was not shown to have been operating at an excessive rate of speed.
Neither do we find the case of Booth v. Columbia Casualty Co., 227 La. 932, 80 So. 2d 869, in point. There plaintiff first entered an intersection with a right of way street at a blind corner. Plaintiff’s car was in the middle of the intersection when it *466 was struck by a garbage truck traveling at approximately 20 miles per hour. Under the facts of that case the plaintiff had preempted the intersection, and, accordingly, had the right to proceed under the well settled jurisprudence that an automobile which first enters and pre-empts an intersection has the right of way over an approaching automobile. There was no blind corner here or a question of prior preemption but a failure of plaintiff to keep a proper lookout, who, in spite of the approaching automobile, proceeded recklessly and without caution into the intersection in front of approaching traffic, which he saw or could have seen by the exercise of the slightest diligence.
Cooke v. Seegers, 17 La.App. 313, 136 So. 216, involved an accident on a dark, rainy night at the intersection of Wilkinson Street with Creswell Street in the City of Shreveport. Mrs. Cooke, the wife of plaintiff, was driving west on Wilkinson Street at a rate of 15 to 18 miles per hour. After proceeding two-thirds of the way across the intersection with Creswell Street, which was a right of way street, her vehicle was struck by the automobile of defendant. It was there held that plaintiff’s wife had successfully pre-empted the intersection and had reached a point where she had a legal right to be and where defendant’s automobile had no legal right to be; that she had already reached a place of safety in negotiating the intersection when the collision occurred. The facts were convincing that defendant’s automobile was moving at a very rapid rate of speed and that such contributed materially to the cause of the accident. We find the additional authorities cited by plaintiff neither applicable nor controlling.
Plaintiff next contends that this is a case for the application of the doctrine of the last clear chance. This doctrine, broadly stated, is that the negligence of a plaintiff does not preclude recovery of damages where it appears that the defendant, by the exercise of reasonable care and prudence, could have avoided injury to plaintiff, notwithstanding plaintiff’s own negligence. The theory is that the negligence of the plaintiff should not preclude him from recovery in those cases where the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of plaintiff’s negligence. The practical import of this principle is that a negligent defendant is held liable to a negligent plaintiff if the defendant, aware of plaintiff’s peril, or although unaware thereof, in the exercise of due care and prudence, should have been aware of it. These principles were thoroughly discussed in the cases of Rottman v. Beverly, 183 La. 947, 165 So. 153, and Jackson v. Cook, 189 La. 860, 181 So. 195, and have been invariably followed in subsequent cases where the facts so warranted. Deck v. Page, La.App., 77 So.2d 209; Prine v. Continental Southern Lines, Inc., La.App., 71 So.2d 716; Lawrence v. Sansone, La.App., 48 So.2d 281; Parker v. Home Indemnity Co. of New York, La.App., 41 So.2d 783.
This doctrine, however, cannot be applied except in cases where the defendant’s superior knowledge of plaintiff’s peril is coupled with defendant’s ability to avoid the accident and the consequent injury to plaintiff. Neither of these conditions is present in the instant case. The doctrine likewise has no application where plaintiff’s negligence, as we have found here, constituted the sole and proximate cause of the accident.
Finally, we conclude there was no manifest error in the judgment appealed. As was stated in Norman v. State, La.App., 69 So.2d 120, 131:
“It has become axiomatic that the findings of a trial judge on questions of fact will not be set aside nor disturbed by an appellate court in the absence of manifest error. The same principle is applicable to a consideration of the verdict of a jury. Consistent adherence to this rule is evidenced by a long line of cases.”
In this case, by unanimous verdict of the jury, judgment was rendered favorable to defendants. Our study and review of the voluminous record in this case brings us to *467 the same conclusion. Not only do we fail to find manifest error but the record amply supports the conclusions reached. The judgment should, therefore, be affirmed.
For the reasons assigned, the judgment appealed is affirmed at appellant’s cost.
Affirmed.