90 So.2d 534 (1956)
Fred W. KEITH, Plaintiff-Appellee,
v.
ROYAL INDEMNITY COMPANY et al., Defendants-Appellants.
No. 8602.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1956.
Rehearing Denied November 29, 1956.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellants.
J. Bennett Johnston, J. Bennett Johnston, Jr., G. M. Bodenheimer, Shreveport, for appellee.
*535 AYRES, Judge.
This is an action by a tutor for and on behalf of two minor children for damages for the death of their father and mother in an automobile collision occurring at the intersection of Midway Street and Linwood Avenue in the City of Shreveport. Additional demand was made for the value of the Ford automobile allegedly destroyed in the accident.
The defendants are Oliver Miles Holt, a minor, represented by a curator ad hoc, and the Royal Indemnity Company, Holt's insurer, whose maximum contractual liability was limited to $5,000 for any one person and $10,000 for all persons in one accident, and to $5,000 in property damage.
From an adverse judgment for $5,350 in favor of each of the two minors, against both defendants, in solido, with an additional judgment of $1,750 for each of said children against the defendant, Holt, the defendants appealed. Plaintiff has answered the appeal, praying that the additional award in favor of each of said minors against Holt be increased to $15,000.
The collision giving rise to this action occurred December 18, 1955, at approximately 9:00 P.M. at the intersection of Linwood Avenue with Midway Street in the City of Shreveport, as aforesaid. Linwood Avenue is a four-lane concrete paved thoroughfare, with a width of 43', 8" from curb to curb, and runs in a general north and south course. Midway Street is an oiled dirt street with open ditches on both sides having an over-all width of 30', 11" at its intersection with Linwood Avenue. Its course is generally east and west and makes a "T" intersection with Linwood, approximately opposite the private driveway entering Forest Park Cemetery, located east of Linwood Avenue. This driveway is offset from the street intersection to the north approximately the width of Midway Street in such a manner that the south line of the driveway is about continuous with the north line of Midway. At the time of the collision the gates to Forest Park Cemetery were open so that the public could enter the cemetery to view the Nativity scene set up on the hillside in the south end of the cemetery.
Archie B. Keith, accompanied by his son, Duane Carlton Keith, aged 15, who was riding on the front seat beside him and his wife, Kathleen Keith, who was riding in the rear seat, was driving his 1953 Ford automobile east on Midway Street when, upon approaching the aforesaid intersection, he inquired of his wife whether she would like to cross over into the cemetery and view the Christmas lights and, upon her assenting, he proceeded to and into the intersection and across Linwood Avenue to a point where the front of his car had entered the gate to the cemetery when a 1955 model Chevrolet, driven by Holt, accompanied by Edgar Selman, who was riding with him on the front seat, and three young ladies on the rear seat, approached from the south, or from Keith's right, and struck the rear right-hand side of the Keith Ford about the back wheel, the Chevrolet continuing 48', 7" beyond the point of impact, carrying the Ford sidewise in front. The point of impact was 9', 9" west of the east curb of Linwood Avenue. The Chevrolet came to rest with its front end on the curb.
Archie B. Keith was alleged to have received a basal skull fracture and died approximately three hours following the accident, and that Mrs. Keith received a broken neck and expired December 24, 1955. It was stipulated that their deaths were caused from injuries received in the accident.
The specifications of negligence of Holt are that he was driving at an excessive rate of speed in violation of the limits provided by City ordinance; that he failed to maintain a proper lookout or proper control of his vehicle, which was not equipped with proper brakes. Additionally, Holt was alleged to have had the last clear chance to avoid the accident and by the exercise of *536 proper caution could have avoided the accident, and, in the alternative, that if the actions of Keith as the driver of the automobile constituted negligence and contributed to the accident and that the defendant, Holt, did not have the last clear chance to avoid the accident, then that the aforesaid actions of Holt constituted negligence proximately contributing to the accident as a consequence of which Keith's actions, if considered negligent, were neither imputable to his wife nor to his son, who were riding as guest passengers.
The countercharges of negligence were made against Keith in failing to stop and make proper observations for traffic on Linwood Avenue before entering the intersection, in failing to see the approach of the Holt Chevrolet and entering the intersection without first ascertaining that he could do so with safety, and in failing to keep his automobile under proper control, as well as in failing to remain in a position of safety on Midway Street after he saw, or could have seen, the approach of the Holt automobile too near to the intersection to permit his entry without precipitating a collision.
Contributory negligence was charged to Kathleen Keith and to the minor, Duane Keith, as passengers in said automobile, in failing to give warning to the driver of the stop sign on Midway at the intersection with Linwood, in failing to protest the entrance into said street without stopping, or, if the vehicle stopped, then in failing to protest the driver's entrance into the intersection when the Holt Chevrolet was too near to permit said entry to be made in safety.
From these charges, one of the questions to be resolved is whether the Keith automobile pre-empted the intersection. There is a conflict of testimony as to whether the Keith car stopped at the intersection. Duane Keith testified that his father stopped and looked to his left from which traffic would be approaching, if any, on the side from which he was to enter Linwood Avenue. No traffic was approaching from that direction. The son was unable to testify that his father looked to his right.
Holt's testimony was to the effect that Keith only slowed down and then proceeded out into the street. The testimony of the occupants of his car shows they were not paying too close attention to traffic conditions or the driving of the automobile in which they were riding. Their testimony as to whether Keith stopped is vague and inconclusive. At any rate, whether the Keith car stopped or, without stopping, proceeded across Linwood Avenue, it was concededly going at a moderately slow rate of speed.
The intersection was in a depression on Linwood Avenue, from which, to the south, there was an incline of two percent grade and to the north an incline of four percent grade. There was a distance of approximately 300 feet from the intersection to the top of the hill to the south.
The preponderance of the evidence is that Holt was traveling much in excess of 35 miles per hour, the speed limit provided by ordinance in the City of Shreveport. Holt testified that he was going between 35 and 40 miles per hour but that he had no idea how fast the other car was traveling. Captain F. G. Porta of the Shreveport Police Department, who witnessed the accident from his residence about a block south of Midway Street, estimated Holt's speed at 60 miles an hour. Porta was off duty and while closing his garage heard the squealing of tires, which attracted his attention, and, upon looking from that location, he could see the automobile later identified as that of Holt when it was 150 feet or more from the Midway Street-Linwood Avenue intersection. This witness testified that the Holt automobile at first appeared to be sliding straight forward and then at an angle and finally sideways before it hit the Ford. This witness immediately went to the scene of the accident and described the collision as one with a heavy impact. The force of the impact and the fact that the Chevrolet *537 skidded a distance exceeding 90 feet and for more than 48 feet thereof carried the Ford with it are physical facts corroborating the officer's testimony that Holt's speed was excessive and in all probability exceeding 60 miles per hour. From the top of the hill there was no obstruction to view to motorists proceeding north to the intersection.
Ann Holt was almost thrown over the back of the front seat when her brother applied the brakes, a fact indicative in itself that the car was making considerable speed. The evidence preponderates that Holt did not apply his brakes or sound his horn at the top of the hill or sound his horn at any time, but that when the brakes were applied they were applied continuously until the Chevrolet skidded into the Ford.
Had Holt been proceeding at a lawful rate of speed, he could have seen the Keith automobile enter the intersection when he, Holt, was about the top of the hill, from where he would have it believed he saw the Keith car. The Keith car would then have had sufficient time and opportunity to enter and complete the intersection before the same would have been entered by Holt. No other logical conclusion can be reached from the facts established by the record but that Holt only saw the Keith car well out into the intersection momentarily preceding the application of his brakes. To that point of time and location his speed had not been diminished. This indicates that Holt was not keeping a proper lookout, otherwise he would have seen the Keith car sooner than he did.
With no other traffic approaching, particularly from the north, with the Keith car in a manner completing and emerging from the intersection, there was more than ample space in a 43', 8" paved avenue for Holt to have swerved slightly to his left and avoided the accident. That he did not do so or was unable to do so can only be attributed to his excessive speed and his failure to maintain proper observation.
The record clearly supports the proposition that Keith pre-empted the intersection, which he could have completed safely and without obstructing or impeding other traffic had defendant Holt been proceeding at a lawful rate of speed, under the interpretation of pre-emption to be the entrance of an intersection with a normal and reasonable opportunity and expectation of clearing the same without obstruction of the path of other vehicles under normal and reasonable circumstances. Butler v. O'Neal, La.App., 26 So.2d 753; Aucoin v. Houston Fire & Casualty Co., La.App., 44 So.2d 127; Hooper v. Toye Bros. Yellow Cab Co., La.App., 50 So.2d 829; Harris v. Travelers Indemnity Co., La.App., 70 So.2d 235; Broughton v. Touchstone, La.App., 72 So.2d 552.
Pertinent and appropriate here is a statement and ruling of the Supreme Court in Booth v. Columbia Casualty Company, 227 La. 932, 80 So.2d 869-870, wherein it was stated:
"It appears from the evidence in this case that the plaintiff first entered the intersection of the streets traveling at the rate of about seven miles an hour and was fully within the intersection when his car was struck by the garbage truck. The testimony of the defendant's driver and his companion in the truck discloses that the plaintiff's car was in the middle of the intersection when it was struck by the garbage truck and that the garbage truck was traveling at a rate of approximately twenty miles per hour. All of the parties to this suit concede that this is a blind intersection. The testimony shows that the plaintiff slowed down before entering the intersection and entered the street at a rate of speed of seven miles per hour. The plaintiff having pre-empted the intersection had the right to proceed and under the well-settled jurisprudence the automobile which first enters an intersection has the right of way over an approaching *538 automobile and the driver who does not respect this legal right of the automobile which first entered the intersection to proceed through in safety, is negligent, even though the car there after entering the intersection is being driven on a right of way street. Gauthier v. Fogleman, La.App., 50 So. 2d 321 and the authorities cited therein. We do not find any evidence to show any contributory negligence on the part of the plaintiff."
Under the law of Louisiana, a motorist, however, who has the right of way on a preferential street is not justified, because of such superior right, to heedlessly and carelessly drive his automobile at a rapid speed into and over road crossings and intersections without due regard for the rights of others. Sullivan v. Locke, La. App., 73 So.2d 616; Johnson v. Item Co., 10 La.App. 671, 121 So. 369.
This court very properly stated in Prudhomme v. Continental Casualty Company, 169 So. 147, 152:
"The superior privilege of right of way does not confer license to disregard fundamental rules instituted for the protection and safety of persons motoring on public highways. * *
"`Motorist having right of way at intersection is not thereby relieved of duty of maintaining adequate lookout.' Holderith v. Zilbermann (La.App.) 151 So. 670; Murphy v. Star Checker Cab Company (La.App.) 150 So. 79; Pugh v. Henritzy (La.App.) 151 So. 668; Johnson v. Item Company, 10 La.App. 671, 121 So. 369; Hamilton v. Lee (La. App.) 144 So. 249."
Appellants state in brief:
"It was, in fact, after Holt had passed the point of `irrevocable commitment' (i. e., only some 50 feet or so south of the south line of Midway) that Keith took it upon himself to drive into Linwood either in absolute ignorance that Holt was there because Keith had not looked, or in the mistaken belief, if he did look, that he had sufficient time to get across the intersection before Holt could arrive."
This contention is unsupported by and inconsistent with the testimony in the record, the substance of which is that Holt was 200 or 300 feet from the intersection, as he himself contended, when he saw Keith approaching the intersection, and inconsistent with the facts revealed at the time that Holt, after allowing for the normal reaction time, applied his brakes 43', 11" before the impact, as well as out of harmony with the maximum speed attributed to the Keith car. Keith would have to have either slowed his car, as contended by defendant, or stopped, as contended by plaintiff, and reached a speed at least equal to that of the Holt car in order to reach the point of entering the cemetery gate. That he did so is not even contended and is not supported by the facts. With the Holt car only 200 to 300 feet distant, there was a reasonable and normal opportunity for Keith to enter and complete the negotiation of the intersection, had Holt been proceeding at a lawful rate of speed, which Keith had a right to expect. Keith was not negligent in attempting to negotiate the intersection under those conditions.
The conclusion is, therefore, inescapable that Holt was speeding and not keeping a proper lookout and that his negligence in those respects is the proximate cause of the accident and the deaths of Archie B. Keith and Mrs. Kathleen Keith. His negligence was the sole and only cause of the accident. These conclusions effectively dispose of defendants' plea of contributory negligence.
Prophetic indeed was the solicitation of the husband to the wife on the eve of the Holy Season that they pass over the street into the cemetery and view the Christmas lights, little thinking there was in store for *539 them a scene of a perfect Christmas illuminated by the Light Eternal in a day perfect with celestial beauty.
To the two children surviving, this world and their future became immediately dark and dreary, void of happiness, cheer and hope, due to their premature loss at a time when they most needed the love, care, support and companionship of those dearest to them, who guided in close association a happy and contented family. Their loss defies monetary evaluation.
There can be no question as to the justification for an award of substantial damages. Considering the facts and circumstances as disclosed by the evidence in this case, and the ability and/or the inability of the individual defendant to pay, which is a factor recognized in our jurisprudence to be taken into account in the determination of awards for damages, we have concluded that an award of $15,000 for each of the said minors for the loss of their father and mother will satisfy the ends of justice. Accordingly, the award of each of said minors against the defendant, Holt, individually, will be increased from $1,750.00 to $10,000.
The claim for property damage, that is, damages for the loss of the Keith automobile demolished in the accident, can only be recovered by either the administrator of Keith's estate, the executor of his will or by his legally recognized heirs who have been placed in possession of his property. There is no such right in a tutor of minors merely as such tutor. The demands as to this item should be rejected as of nonsuit, and, accordingly, the award against the defendants, in solido, should be reduced by $350, or to $5,000, for each of said minors.
Accordingly and for the reasons assigned, the judgment is amended and recast to read as follows:
It is, therefore, ordered, adjudged and decreed there be judgment in favor of plaintiff, Fred W. Keith, tutor, and for the use and benefit of the minor, Duane C. Keith, against the defendants, Oliver Miles Holt and the Royal Indemnity Company, in solido, for the full and true sum of $5,000; that there be further judgment in favor of plaintiff, Fred W. Keith, in his aforesaid capacity and for the use and benefit of the minor, Duane C. Keith, and against the defendant, Oliver Miles Holt, individually in the additional sum of $10,000.
It is further ordered, adjudged and decreed there be judgment in favor of the plaintiff, Fred W. Keith, tutor, and for the use and benefit of the minor, Chlois Marzelle Keith, and against the defendants, Oliver Miles Holt and the Royal Indemnity Company, in solido, in the full sum of $5,000; that there be further judgment in favor of the plaintiff, Fred W. Keith, in his aforesaid capacity and for the use and benefit of the minor, Chlois Marzelle Keith, and against the defendant, Oliver Miles Holt, individually, in the additional sum of $10,000.
It is further ordered, adjudged and decreed that all of said sums bear five percent per annum interest from judicial demand until paid.
It is further ordered, adjudged and decreed that the demands for property damage in the loss and destruction of the Keith automobile be dismissed as of nonsuit.
It is further ordered, adjudged and decreed that the defendants pay all costs of court, including the cost of this appeal.
Amended and affirmed.