191 So.2d 740 (1966)
George W. EARLES, Plaintiff-Appellee,
v.
Fred D. VOLENTINE et al., Defendants-Appellants.
No. 10653.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1966.
Rehearing Denied November 29, 1966.
Writ Refused January 20, 1967.
*741 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for State Farm Mutual Automobile Ins. Co., defendant-appellant.
Watson, Williams, Brittain & Murchison, Natchitoches, for Fred D. Volentine, Wanda V. Head, and Southern Farm Bureau Casualty Ins. Co., defendants-appellants.
Louis Lyons, Bossier City, Hal V. Lyons, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This action for damages arose out of an automobile collision on May 15, 1964, at the intersection of James Street and U.S. Highway 80 in Bossier City, Louisiana. Involved were a Chevrolet, owned and operated by plaintiff, George W. Earles, and a Pontiac, owned by Fred D. Volentine and driven at the time by his daughter, Mrs. Wanda V. Head. Made defendants in addition to Volentine and Mrs. Head were Southern Farm Bureau Casualty Insurance Company, insurer of the Volentine Pontiac, and State Farm Mutual Automobile Insurance Company, insurer of an automobile of John C. Head, husband of Mrs. Wanda V. Head.
After trial, the court concluded that Mrs. Head was guilty of negligence constituting a proximate cause of the accident and that plaintiff was free of negligence. Plaintiff was awarded $10,416.20, of which amount $6,000.00 was awarded for personal injuries, $2,400.00 for loss of future wages, and $2,016.20 for medical and hospital expenses and for past wages. The liability of Southern Farm Bureau Casualty Insurance Company was fixed in the sum of $5,000.00, the limit of liability specified in its policy, and the liability of State Farm Mutual Automobile Insurance Company fixed for the remainder of $5,416.20, as excess insurance. From a judgment thus rendered and signed, the defendant insurers prosecute appeals to this court.
James Street, a boulevard-type street, forms a "T" intersection with Highway 80 from which it runs in a northerly direction. *742 Highway 80 is a 4-lane, paved thoroughfare of a general east-west orientation, with two lanes for traffic in each direction which are separated by a raised strip but no neutral ground.
Traffic through the intersection is controlled by overhead electric signals suspended above each lane. All are normal 3-light signalsamber, red, and greenexcept the one for the inside eastbound traffic lane which has a left-turn green arrow at the bottom to permit eastbound traffic on Highway 80 to enter James Street. This green arrow comes on with the green lights for both eastbound traffic lanes of the highway, remains on for seven seconds, and then goes off. At the time this arrow goes off, the signals on the two westbound traffic lanes change from red to green. Therefore, so long as the green arrow is on in the signal suspended above the inner eastbound traffic lane, red lights continue to be displayed in the signals for both westbound traffic lanes.
Plaintiff approached the intersection from the west, occupying the inner traffic lane, en route from his place of employment to his residence on James Street. The green-arrow signal being on, indicative that a left turn might be made, plaintiff proceeded with this movement. At that time, a pickup truck stopped or almost stopped, was facing plaintiff in the inner westbound traffic lane. Plaintiff continued turning in front of this truck until the front end of his car extended over the northern edge of the pavement, at which time the car was struck on its right side by the automobile operated by Mrs. Head, it having approached in the outer westbound traffic lane. Before beginning his left-turn maneuver, plaintiff extended his arm indicative of his intention, but, before the crossing of the two westbound traffic lanes was completed, the green arrow went off and the lights for westbound traffic turned green. Having observed at some distance that the signals were red, Mrs. Head reduced her speed; but, upon further observing a change to green, she accelerated again, not having seen plaintiff's vehicle until it was in her lane of travel on the northern side of Highway 80. Mrs. Head then applied her brakes and left tire marks upon the highway for a distance of 51 feet before striking the right side of plaintiff's car near the front door. The force of the impact was such that plaintiff's vehicle was partially raised from the ground and momentarily stood on two wheels before settling to rest in an upright position.
While the record does not establish with exactitude the location of plaintiff's vehicle when the green-arrow signal came on, or where Mrs. Head was at the time the signal for her changed to green, this court is convinced, as was the trial court, after a study of all the evidence, that plaintiff began his left-hand turn on a signal favorable for such undertaking and that it remained so to the extent that before his car was struck he had pre-empted the intersection, and, having done so, he was not negligent in continuing on his course even though the signal changed while he was in the process.
The case of Potts v. United States Fidelity & Guaranty Company (La.App.) 135 So.2d 77, 79 (2d Cir. 1961), presented a factual situation similar to that shown in the instant case. There this court stated:
"Holland entered the intersection and proceeded with his left-turn movement on a proper signal for such a maneuver. Where, under such circumstances, a change of signals is effected before the left turn is completed, a motorist engaged in such a movement should have been allowed sufficient time and opportunity by approaching traffic, and, in this instance, by the driver of the Carroll car, to complete the movement even though the latter vehicle may have entered the intersection on a `green' light."
In the instant case, plaintiff had, as Holland had in the cited case, pre-empted the intersection.
*743 In the Potts case we further stated:
"Pre-emption of an intersection, entitling a motorist to proceed therein and to negotiate the same, means an entry into the intersection with the opportunity of clearing the same without obstruction of the path of other vehicles operating under normal and reasonable circumstances and conditions. Butler v. O'Neal, La.App. 2d Cir., 1946, 26 So.2d 753; Aucoin v. Houston Fire & Casualty Co., La.App. 1st Cir., 1950, 44 So.2d 127; Hooper v. Toye Bros. Yellow Cab Co., La.App. Orleans, 1951, 50 So.2d 829; Harris v. Travelers Indemnity Co. of Hartford, Conn., La. App.2d Cir., 1954 (writs denied), 70 So. 2d 235; Broughton v. Touchstone, La. App.2d Cir., 1953, 72 So.2d 552; Evans v. Walker, La.App.2d Cir., 1959, 111 So. 2d 885."
The rule was also emphasized in the Potts case that a motorist must not enter an intersection after a red light turns to green until sufficient time is allowed for cross traffic, already in the intersection, to clear. See, also, Blue Ribbon Cleaners v. Aetna Casualty & Surety Co. (La.App.) 125 So.2d 613 (4th Cir. 1961); Schindler v. Gage (La.App.) 59 So.2d 215 (Orl. 1952).
Thus, the deduction can only be made from these principles and the facts established to exist here that when plaintiff entered the intersection on a favorable traffic signal, but failed to completely negotiate it before the signal changed, he made the entry into the intersection with a reasonable expectation and opportunity of completing his maneuver without obstruction of normal traffic, and that he is therefore not guilty of negligence.
Moreover, it was further pointed out in the Potts case that while an ordinance provides that a motorist attempting a left turn shall yield the right of way to other traffic lawfully using the intersection, the entry of such other traffic into the intersection after one has pre-empted the intersection and begun a left-turn movement pursuant to a signal indicating that such movement might be made, without allowing sufficient time and opportunity for the vehicle already in the intersection to complete its negotiation thereof, is unlawful.
In Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964), it was held that a motorist who stopped at an intersection in obedience to a traffic light, who, while waiting for the light to change, noticed the lights of an automobile approaching from the opposite direction, and who, when the signal light indicated a green arrow for a left turn, started such left turn but was struck by the other vehicle was not negligent in making a left turn in front of the oncoming vehicle.
This same rule was previously recognized by this court in Martin v. Slocum (La.App.) 147 So.2d 454, 455 (2d Cir. 1962), where it was stated:
"The law is well settled that where traffic is controlled by an electric semaphore light a motorist is guilty of negligence if he proceeds into an intersection after a red light turns to green without allowing sufficient time for those in the intersection to clear same." See, also, Dupuy v. Maury (La.App.) 136 So.2d 302 (4th Cir. 1962).
Counsel for defendants would excuse the omission of Mrs. Head to stop by her failure to see plaintiff's car until too late because of the presence of the pickup truck in the inside lane. The answer to this contention is that to accelerate upon seeing the light change from red to green, without being able to see whether the intersection had been cleared of cars that might be lawfully therein, was negligence.
We find no basis for concluding that the award made by the trial court is excessive. Plaintiff sustained a severe cervical sprain, contusion of the anterior chest wall, cardiac contusion, hiatal hernia, contusion *744 and sprain of the left shoulder, as well as pneumonitis and cerebral thrombosis, and fractures of the third and fourth ribs. His condition was classified as critical upon reaching the hospital, where he remained for several weeks. Because of osteoarthritis and subluxation of the fifth and sixth cervical vertebrae, plaintiff was placed in traction. He suffered several small strokes and became mentally disturbed and affected.
For the reasons assigned, the judgment appealed is affirmed at defendants-appellants' costs.
Affirmed.