HALL, Judge.
In this intersectional collision case the trial court found the left turning defendant negligent and found plaintiff guilty of contributory negligence barring his recovery. From the adverse judgment plaintiff appealed.
The facts of the case are accurately and concisely set forth in the trial judge's opinion:
“This action for personal injuries, property damage, loss of earnings and medical expenses arose out of an automobile collision which occurred on March 6, 1970 at the intersection of U. S. Highway #80 and Benton Road, otherwise known as the ‘Kickapoo’ intersection. Involved were a Ford truck owned and operated by plaintiff and a Buick automobile owned and operated by the defendant, Gervis L. Pounders. Also made defendant was United States Fire Insurance Company, the insurer of Pounders.
“Plaintiff was proceeding North and the defendant Pounders was proceeding South on Benton Road. At the ‘Kickapoo’ intersection both Benton Road and U. S. Highway #80 are 4-lane thoroughfares, Benton Road providing two north-bound and two southbound lanes for traffic and U. S. Highway #80 providing equal facilities for East-West traffic. In addition, there are blacktop aprons permitting traffic proceeding north, south, east or west to negotiate a right turn. The intersection is controlled by electric signals, which include left turn arrows for East-West traffic. There are no left turn arrows provided for North-South traffic. In passing, the Court takqs judicial notice of the fact that this is a much used intersection and a highly dangerous one. One result of the failure to provide left turn arrows for North-South traffic is that drivers wishing to make a left turn have to contest for the right of way. If a vehicle Southbound on the Benton Road begins his left turn onto U. S. Highway #80, a vehicle North-bound on Benton Road must halt and wait until the intersection is clear before beginning his left turn onto U. S. Highway #80.
“When the defendant Pounders began his left turn from Benton Road onto U. S. Highway #80 there were two Northbound vehicles — an automobile and a schoolbus — stopped in the inside Northbound lane of Benton Road waiting to turn left. Pounders view of traffic proceeding North on the outside lane of Benton Road was obscured by these waiting vehicles and Pounders admitted that he did not see plaintiff in the outside North-bound lane of Benton Road until he, Pounders, had reached that lane, whereupon he stopped. Plaintiff Maranell apparently saw Pounders first and applied his brakes in an effort to avoid the accident. Plaintiff testified *645 that while proceeding North in the outside lane of Benton Road he noticed the traffic signal facing him was red and slowed down. When he saw the light change to green he accelerated his vehicle in second gear and proceeded to pass the schoolbus and automobile to his left before he saw the Pounders vehicle. Maranell left approximately 36 feet of skid marks prior to the impact. His vehicle was damaged on the left fender and left side. Damage to the Pounders vehicle was near the center of its front portion.”
The trial judge correctly dealt with the defendant’s negligence as follows:
“Inasmuch as the defendant Pounders did not have the benefit of a protective left turn arrow and in view of the high degree of care required of a left turn vehicle, we find that Pounders was negligent in beginning his left turn under conditions which precluded his making certain that the turn could be accomplished with safety and that his negligence was a proximate cause of the accident.”
The trial judge also concluded that plaintiff was negligent in accelerating his vehicle and proceeding into the intersection when his view was totally obscured by the parked schoolbus and automobile, relying primarily on Earles v. Volentine, 191 So.2d 740 (La.App.2d Cir. 1966). In our opinion, the principal embodied in the Earles case is not applicable to the facts of the instant case. We reverse and hold plaintiff free from negligence and, therefore, entitled to recover.
In Earles, plaintiff made a left turn on a green arrow signal. Defendant, approaching the intersection in the outside lane on a red light, accelerated and proceeded into the intersection when the light changed from red to green, not having seen plaintiff’s vehicle because her vision was obscured by a pickup truck in the inside lane. The court held that “to accelerate upon seeing the light change from red to green, without being able to see whether the intersection had been cleared of cars that might be lawfully therein, was negligence.” (Emphasis supplied). The holding in Earles is consistent with numerous cases holding that a motorist is guilty of negligence if he proceeds into an intersection after a red light turns to green without allowing sufficient time for those who have lawfully pre-empted the intersection to clear. See Martin v. Slocum, 147 So.2d 454 (La.App.2d Cir. 1962); Potts v. United States Fidelity & Guaranty Company, 135 So.2d 77 (La.App.2d Cir. 1961); Blue Ribbon Cleaners v. Aetna Casualty & Surety Co., 125 So.2d 613 (La.App.4th Cir. 1961). The significant fact that differentiates the instant case from the cases cited is that defendant made his left turn after the light changed and, therefore, did not lawfully enter or pre-empt the intersection and did not present a situation of clearing traffic already in the intersection before the light changed. Defendant’s action in making a left turn after the light turned green for vehicles traveling both north and south without determining that the turn could be made with safety was an unlawful and negligent entry into the intersection. The principal of Earles is, therefore, not applicable.
Defendants also rely on Tingle v. Rogers, 134 So.2d 110 (La.App.2d Cir. 1961) and Sullivan v. Locke, 73 So.2d 616 (La.App.2d Cir. 1954). Both of these cases are distinguishable factually. In Tingle, the plaintiff, who struck a left turning vehicle, was proceeding through the intersection on a motorscooter at a speed greatly in excess of that permitted by law, with bad brakes, and with his vision obscured by vehicles stopped to his left. The evidence does not show any such negligence on the part of plaintiff in the instant case. In Sullivan, the defendant made a long, diagonal left turn but plaintiff never saw defendant until she hit him and never applied her brakes. In the instant case the front end of defendant’s left turning automobile had *646 only partially crossed plaintiff’s lane of travel at the point of impact, and, upon observing the left turning vehicle, plaintiff immediately applied his brakes and attempted to stop. The evidence does not support a finding of excess speed on the part of plaintiff or that he failed to keep a proper lookout or that he failed to take appropriate steps when the danger presented itself.
The Tingle and Sullivan cases stand for the proposition that a motorist approaching an intersection with a string of stopped cars to his left should exercise some precaution commensurate with the situation and should keep a proper lookout. This does not mean that such a motorist must bring his vehicle to a stop or near stop or exercise any extraordinary precaution. Applying the rule of the cases relied on by defendants to the facts of the case before us, we find that plaintiff complied with this standard of care. His speed was not excessive. He saw the left turning automobile as soon as it was possible for him to do so and immediately applied his brakes in an effort to avoid a collision.
Defendants also urge that plaintiff was negligent in proceeding straight through the intersection because of a sign directing that the right lane must turn right. A photograph offered into evidence shows the location of such a sign a substantial distance south of the intersection. The investigating officer testified there is no ordinance requiring traffic proceeding north in the outside paved lane to turn right and we conclude that the sign in question was not intended to regulate traffic proceeding in the lane in which plaintiff was traveling.
Immediately after the accident plaintiff experienced pain in his neck and lower back. He was examined by Dr. W. W. Fox, an orthopedic specialist, who found muscle spasm in the cervical and lumbar areas. Dr. Fox diagnosed the injuries as sprains of the cervical spine and lumbar spine and prescribed muscle relaxants and pain medication. He saw plaintiff on five additional occasions. On March 17, 1970, about eleven days after the accident, plaintiff was advised to return to work but not to do any bending or heavy lifting. On April 7, Dr. Fox found plaintiff to be free from pain or other symptoms and discharged him as fully recovered. Plaintiff later experienced some pain and discomfort and was again examined by Dr. Fox on May 25. At that time the doctor was of the opinion it would be several weeks or months before plaintiff would be completely normal.
Plaintiff testified the neck pain cleared up a couple of days after the accident but that he continued to have some pain in the lower back. He testified that at the time of the trial in February, 1971, he was fully recovered and had not had any symptoms at all since about four months previously. An award of $1,500 will adequately compensate plaintiff for his personal injuries.
Plaintiff was employed loading and unloading tires at a wage of $140 per week. He was required to be off from work at least two and one-half weeks and lost $350 in wages. His medical expenses amounted to $170. He is entitled to recover $50 for damage to his vehicle, being the amount of his deductible under his collision insurance policy. Special damages total $570.
For the reasons assigned, the judgment of the district court is reversed and there is judgment in favor of plaintiff, Ronald Lee Maranell, and against defendants, George L. Pounders and United States Fire Insurance Company, in solido, in the amount of $2,070, together with legal interest thereon from date of judicial demand until paid. The expert witness fee of Dr. W. W. Fox is fixed at $100 and defendants are cast, in solido, for all costs of this proceeding.
Reversed and rendered.