SAVOY, Judge.
On January 26, 1949, a collision occurred about eight o’clock in the evening on Highway 71 a few miles south of Clarence in Natchitoches Parish between a Ford car driven by E. C. Tanner and a truck-trailer of the Texas and Pacific Motor Transport Company. Several months later Mr. Tanner died. His wife filed suit against the Texas and Pacific Railway Company on January 24, 1950. She appeared individually and on behalf of her minor daughter, Barbara Ann.
Defendant Railway Company filed two exceptions of no right of action. The first was directed against the claim which Mrs. Tanner was asserting for the use and benefit of her minor daughter on the ground that plaintiff had not qualified as tutrix and was without capacity to represent said minor or to stand in judgment. The other exception was based on the allegation that the truck and trailer involved in the accident belonged to the Motor Transport Company, a separate corporation from the Railway Company.
On May 21, 1957, some seven years later, plaintiff filed a supplemental and amended petition, making practically the same allegations as in the original petition with two exceptions: first, Barbara Ann Tanner appeared in the proceedings for the first time in her own name, alleging that she had *362 reached the age of majority; second, plaintiffs substituted the Texas and Pacific Motor Transport Company as defendant. The Motor Transport Company appeared and filed a plea of prescription, a plea of lis pendens, an exception of no right or cause of action, and plea of laches.
On January 30, 19S8, the lower court overruled the plea of prescription filed by the Motor Transport Company, and also the exception of no cause or right of action, the plea of laches and the plea of lis pendens. The Court also ordered that the exception of no right of action be sustained insofar as the Texas and Pacific Railway Company was concerned.
The supplemental and amended petition makes the same charges of negligence that were made in the original petition, namely, that the driver of the Motor Transport Company was negligent (1) in operating the truck over the center lane of the road a distance of at least two feet; (2) in driving at a speed of 65 miles per hour; (3) in failing to dim his lights on the approach of the Tanner car; and (4) in operating the truck with defective brakes.
The defendant denied the allegations of negligence contained in plaintiffs’ petition. Further answering, it alleged that the proximate cause of the accident was Tanner’s negligence in driving on the wrong side of the highway and operating his car at an unreasonable speed; that he ran into defendant’s truck and trailer while the latter was on its side of the road, which, under the circumstances, made it impossible for defendant’s driver to avoid the collision. In the alternative defendant alleged contributory negligence on the part of the deceased claiming that the lights of the truck were burning as the car of the deceased approached; that the automobile was driven across the center line of the highway and into defendant’s truck which was on its proper side of the road; that the driver of defendant’s truck was unable to avoid the collision; that deceased was negligent in failing to keep a proper lookout and in operating his automobile at an excessive rate of speed and in driving on the wrong side of the highway; that he was under the influence of liquor.
Judgment was entered overruling the exceptions on January 30, 1958, and the case was tried on June 19, 1958.
The district judge rendered judgment on the merits on November 29, 1960, in favor of the defendant Motor Company and against plaintiffs, Mrs. Pearl R. Tanner and Barbara A. Tanner, rejecting their demands and dismissing the suit at their costs. He handed down a written opinion reading as follows:
“This law suit grew out of a head on collision between an automobile driven by Mr. E. C. Tanner and a truck belonging to the defendant driven by a Mr. John W. Thomas. There were apparently only two eye witnesses to the accident, Mr. Tanner and Mr. Thomas, and since Mr. Tanner lost his life in the accident, that leaves Mr. Thomas as the only eye witness to testify as to what happened.
“The gist of his testimony was that at the time of the accident, the truck was in its lane of traffic and had practically come to a stop; that Mr. Tanner crossed the center line of the highway and struck the truck; that the accident was caused solely through the negligence of Mr. Tanner and that he was without fault.
“Other than this there is some evidence pro and con as to the point of impact, but when you consider the testimony of the trooper and the pictures of Urbach, even this seems to preponderate in favor of the defendant, thus the testimony of the only eye witness is corroborated and accordingly the demands of the plaintiffs must be rejected at their cost.”
Reviewing the evidence, it is apparent that at the time of the collision, the *363 Motor Transport truck was proceeding in a southerly direction on the highway, the Tanner car was proceeding in a northerly direction, and the two vehicles collided headon, the point of impact being the area of the left front fender of each vehicle.
We shall now take up each of plaintiffs’ allegations of negligence.
First, with respect to the allegation that defendant’s driver was over the center line of the highway, plaintiffs presented the testimony of several witnesses who- arrived at the scene shortly after the accident occurred, and who testified that the position of the truck was such that it was over the line. Defendant, on the other hand, presented the testimony of others who arrived on the scene to the effect that the position of the truck was such that it was entirely in its own (the west) lane of traffic. The truck driver testified that Mr. Tanner struck his truck in the west lane. Several photographs were made at the scene and were introduced in evidence by defendant, which pictures clearly show the truck in its proper lane with its right hand wheels just at the edge of the road surface. The same pictures show the Tanner automobile facing in a westerly direction, more or less perpendicular to the north-south direction of the highway. The Court realizes, of course, that the relative positions of the vehicles after the collision would not necessarily tell the whole tale. However, summarizing the evidence that is available, we have a more or less evenly balanced conflict of testimony with respect to position, coupled with the testimony of the truck driver and the photographs. We feel that the preponderance of the evidence is in favor of defendant and we must, therefore, conclude that defendant’s truck was in its proper lane.
Second, with respect to speed, in addition to the testimony of defendant’s driver to the effect that he was going about 40 to 45 miles per hour, the transcript contains the testimony of another truck driver who pulled in behind defendant’s driver a few miles prior to the time of the accident. He testified that he was going about 40 miles per hour and that defendant’s driver stayed about the same distance ahead of him up to the time of the accident, the conclusion being that defendant’s driver must have been going at about the same speed. The record simply contains no evidence that defendant’s driver was speeding.
Third, with respect to defendant’s driver’s failure to dim his lights, the only thing in the entire record is the testimony of defendant’s driver to the effect that when he saw Mr. Tanner in his (the truck driver’s) lane, he “blinked” his lights at him to attract his attention. If the driver’s testimony that Mr. Tanner was in the wrong lane is taken as correct, we cannot condemn him for attempting to signal the approaching driver.
Fourth, with respect to defective brakes, there simply is no evidence whatsoever on that point.
 Fifth, in their brief, plaintiffs argue that defendant’s driver had the last clear chance to avoid the accident, and cite the case Deck v. Page (Ct.App., Orleans, 1955), 77 So.2d 209, for the purpose of showing that a duty to avoid an accident arises when one discovers the peril of another. The Deck case is distinguishable on its facts in that it involved a pedestrian who was crossing the street on a green light. The doctrine of last clear chance includes, in addition to defendant’s superior knowledge of plaintiff’s peril, defendant’s ability to avoid the accident. Carlson v. Fidelity Mutual Insurance Co. (Ct.App., 2 Cir., 1956), 88 So.2d 461. In the case at bar, it appears from the record that it had been raining, the shoulders of the highway were muddy and not overly wide, defendant’s driver had braked his large truck to a near stop and he had attempted to signal Mr. Tanner with his lights. It seems to us that he could not be expected to have done more under the circumstances. If there were something which would have enabled him to avoid the accident, it could *364 only be surmised. For that reason, we do not feel the doctrine of last clear chance can be properly applied. Having decided on the merits, it is unnecessary to discuss the various exceptions filed by defendant.
The judgment of the lower court is therefore affirmed. The cost of appeal is to be borne by plaintiffs.
Affirmed.