This suit arises from a collision between a Chevrolet automobile driven by the plaintiff and a Ford automobile driven by defendant, at the intersection of Florida Street Extension Boulevard and North 22nd Street, in the City of Baton Rouge, on June 26, 1946, at about the hour of 8:50 P. M.
The plaintiff alleges that the said collision was due to the negligence of defendant, and claims the amount of $5,000, as damages for personal injuries received by him, and $315 for medical expenses incurred by him, as a result of the collision. The defense is based on a denial of negligence on the part of the defendant and a plea of contributory negligence on the part of plaintiff. The defendant reconvened seeking $300.85 for damages to his automobile and $700 for personal injuries.
The trial resulted in a judgment dismissing plaintiff's suit and rejecting defendant's reconventional demand. Plaintiff has appealed. Defendant has answered the appeal, praying that the judgment, in so far as it dismisses plaintiff's suit, be affirmed; that it be reversed in so far as it rejects his reconventional demand, and asks that there be judgment in his favor in accordance with his reconventional demand.
Florida Extension Boulevard is a four lane highway running in an easterly and westerly direction; in the center thereof there is a rising, save at street intersections, dividing the Boulevard into two parts, affording two lanes of travel for each of the parts. The northern lanes are for vehicles travelling in a westerly direction, while the southern lanes are for vehicles travelling in an easterly direction. North Twenty-second Street to the south of the Boulevard, is a two lane travel street. To the north of the Boulevard, North Twenty-second Street is a four lane street; the eastern half thereof is paved and is a continuation of the street to the south of the Boulevard; the western half was graveled at the time of the accident. Thus, for all practicable purposes, North Twenty-second Street can be considered as a two lane street, both to the north and south of the Boulevard. Florida Boulevard is a heavily travelled street, it being the main artery of the traffic leading from Baton Rouge to the Airline Highway. North 22nd Street is also heavily travelled, being one of the streets leading to industries to the north of Baton Rouge. Traffic at the intersection of the two streets is controlled by a semaphore light overhanging at about the center of the intersection. There is a street light on the northwest corner of the intersection; there were two sign boards on the southeast corner, one of the sign boards being a Community Coffee sign which was lighted by overhanging lights and the other was a Weil's Department Store neon sign. The point of collision of the two vehicles was about six feet to the northwest of the semaphore light.
Plaintiff was driving his father's 1937 Chevrolet Sedan automobile in a westerly direction on the south lane of the north half of Florida Boulevard. The defendant was driving his 1941 Ford Sedan in an easterly direction on the north lane of the south half of Florida Boulevard. Prior to, on the approach and at the time of the accident, the traffic semaphore exhibited a green or "go" light to traffic going easterly and westerly on Florida Boulevard. At the time of the collision, the defendant was in the process of making a left turn from Florida Boulevard into North 22nd Street with the intention of proceeding north on North 22nd Street, and had completed his turn to the extent that the front end of his automobile was just south of the center of the south lane of the north half of Florida Boulevard and just to the northwest of the semaphore. Approximately the left front end of plaintiff's automobile struck the right front fender of defendant's automobile. The damages to the two automobiles, as well as the fact that the *Page 858 
automobiles were displaced very little if any at all, as evidenced by the photographs filed herein, indicate that both vehicles were travelling at a moderate rate of speed. Neither driver applied brakes before the two vehicles collided. In fact, plaintiff, according to his testimony, did not see the defendant's automobile until his car struck it, while defendant only saw plaintiff's approaching automobile after he had started his left turn.
The accident occurred at approximately 8.50 P.M., following a rain and at a time when it was still misty and visibility was somewhat obscured by the mist that was falling. Defendant testified, and he is corroborated by his guest in his automobile, that he was travelling in an casterly direction, in the northern lane of the south half of Florida Boulevard, at about the rate of twenty-five miles per hour, and that as he approached the intersection, the light being green or "go," he reduced his speed to about ten miles an hour, looked around to see if anybody was coming, and seeing none, he proceeded to turn. Just as he started to the left, all of a sudden his lights shone on the windshield of plaintiff's car, without any lights, in front of him. There was nothing he could do to avoid the accident. Plaintiff's car was right on him. He estimates his rate of speed at about ten miles per hour and that of defendant's car at about thirty-five miles per hour at the time of the collision. He states that his car was equipped with good lights, which were then burning; that there was nothing to prevent him from seeing in front of his car a distance of a hundred or one hundred and twenty-five feet. He estimates that plaintiff's automobile was thirty or forty feet away at the time that he first saw it.
[1] It is shown that this intersection was well lighted at the time of the accident. The condition of the weather then prevailing undoubtedly cut down the visibility resulting from the lights at the intersection, somewhat, however not to such an extent as to prevent the defendant from seeing the plaintiff's automobile, whether it had lights or not. Prior to the collision, it can be said that plaintiff and defendant were approaching each other as on a two lane street. According to defendant's own, testimony, he should have perceived plaintiff's automobile approaching at a distance of one hundred or one hundred twenty-five feet. He is charged with having seen, what he should have seen. The reason given by the defendant an his guest as to why they did not see plaintiff's car before making the turn is not very convincing.
Furthermore, the evidence shows that the defendant started to make his left turn before he had reached the center of the intersection as he was required to do.
[2, 3] The evidence convinces us that defendant was guilty of negligence in attempting to make a left turn into North 22nd Street in the face of plaintiff's oncoming automobile. As many times expressed by us: "The law requires a driver to ascertain before making such a turn that there is no traffic approaching from either direction which wlll be unduly or unnecessarily delayed and requires him to yield the right of way to such approaching traffic. And when a driver intends to turn to his left to ente an intersecting road, he approach the intersection in the lane for traffic to the right of and nearest the center of the highway, and in turning shall pass beyond the center of the intersection, passing as closely to the right thereof as practicable before turning the vehicle to the left." Act No. 286 of 1938, Section 3, Rule 9, paragraph (a) and (b), Dart's Gen.Stat. Section 5214.
Being of the opinion that the defendant was negligent, the next and most serious question is whether or not the plaintiff was guilty of any negligence contributing to the accident. The trial judge found the plaintiff guilty of such negligence.
As did the trial judge in his reasons for judgment, we find that the testimony of plaintiff is very evasive and not clear. We will attempt to give a resume of his testimony as we understand it. The plaintiff testified that some ten or twelve blocks away the scene of the accident, he purchased gasoline at a filling station, at which time the filling station attendant wiped his windshield and his head lights; that he left the station with his lights *Page 859 
burning. He reached a semaphore light and stopped. Thereafter, on the change of light, he proceeded west on Florida Boulevard, on the south lane of the north half of said Boulevard at a moderate rate of speed. Upon approaching the Boulevard and North Twenty-second Street intersection, he perceived the semaphore light showing green and proceeded onward in his western course, "looking straight ahead, watching the traffic light." When he got under the light, the was hit. He did not see defendant's automobile before the collision. The excuse he gives for not seeing the defendant's automobile is that he was watching the traffic light.
There is a conflict in the evidence as to whether plaintiff's lights were burning prior to and at the time of the accident. Plaintiff is corroborated by the filling station attendant that the lights were burning and by the mechanic who examined plaintiff's automobile a day or two after the accident and who testified that plaintiff's lights were damaged, and the bulbs broken and when the bulbs were replaced the lights burned. As, against this, we have the testimony of defendant and his guest that plaintiff's automobile was without burning lights prior to the collision. However, whether he had lights burning or not, the fact remains that the intersection was well lighted, affording each driver a clear view of the intersection and those about to enter the intersection.
Plaintiff's main contention to avoid the plea of negligence is that he was favored with a green light and should not be held to that same high degree of care and vigilance as if no such system prevailed, and he cites many cases in support of his contention.
In Buckley v. Featherstone Garage, Inc., 11 La. App. 564, 123 So. 446, 450, the Court of Appeal for the Secolad Circuit, through Judge Odom, then a member of that Court and subsequently a member of the Supreme Court, said: "* * * In a city where traffic is controlled by the signal light system, neither pedestrians nor vehicles are permitted to enter an intersection on the wrong signal, and to do so is negligence. But the driver of a vehicle who is rightfully in the intersection owes a duty to those who may be negligently therein, and that duty is not only to avoid injuring them when and if their peril is discovered, if he can reasonably do so, but, further, to use due diligence to discover their presence." The doctrine announced in that case has been repeatedly cited and followed in other cases involving a collision in which one of the participants had entered the intersection on a favorable light. The latest case to which we have been referred is the case of Kientz v. Charles Dennery, Inc., 209 La. 144,24 So.2d 292, 294. In that case, the Supreme Court, through Justice Rogers, said: "(2-4) It can not and will not be disputed that a motorist, who recklessly and without exercising some degree of caution enters an intersection on a favorable light, is not free from negligence if he collides with another motorist who enters an intersection on an unfavorable light. And it can not and will not be disputed that a motorist cannot, in the face of imminent danger, rely upon the right of way accorded him by law. But it also can not be disputed that under the traffic light system a motorist, who is proceeding on a proper signal, should not be held to the same degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed and he is not required to anticipate that pedestrians or other motorists will, in violation of law, enter a crossing on a wrong signal. The danger at such crossing is less than if there were no such signals and therefore less care is exacted. Clark v. DeBeer, 188 So. 517, 520, decided by the Court of Appeal for the Second Circuit. In that case a motorist traveling on a green light, at a street intersection, struck a bicyclist who was running against a red light. The Court of Appeal, in its opinion, correctly observed: 'She (the motorist) observed no one approaching, so she directed and continued her attention in front of her and proceeded forward. It was not encumbent on her to persist in looking from side to side as she progressed. Her legal duty, in view of the fact that she had the right of way, was to operate her car cautiously *Page 860 
and carefully at a moderate speed, to be reasonably diligent in her driving and to maintain a general observation of the intersection.' "
We have the observation of Judge McCaleb, in his dissenting opinon in the Kientz-Dennery case, 17 So.2d 506, 513, a former judge of the Orleans Court of Appeal, now a justice of the Supreme Court, and which observation was quoted with approval by our Supreme Court in the Kientz-Dennery case, supra, thusly: "We are living in an advaced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In the circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred."
[4] The defendant contends that plaintiff was not keeping a proper lookout and failed to look either direction before entering the intersection. Although plaintiff admits that he did not look in either direction upon entering the intersection it clearly appears from the record that had he looked in either direction, he would have seen defendant travelling east in his lane of travel. He could not anticipate that defendant would "cut the corner" and make a left turn. He had no cause, at that time, for alarm and there was no reason for hini to believe that it would be dangerous to continue in his travel.
Considering the jurisprudence established by the above cited cases, our conclusion is that the plaintiff was not negligent and that the sole cause of the accident was due to the negligence of the defendant.
The demand of plaintiff was for $5,000 for his physical injuries, pains and sufferings, plus $315 for doctor's and X-ray bills.
[5, 6] As to his claim for doctor's and X-ray bills, we do not find any proof to substantiate that claim, except his testimony that he was charged $5 for a visit to an eye specialist in Washington, D.C. He does not state that he paid the $5. This doctor's testimony was taken, nor was a bill from the doctor produced. The proof is not sufficient to justify an award. The record is barren of any proof that plaintiff has incurred any medical expenses. He was seen by Doctors H.H. Hutchins and Waldo Bernard. Although both of these doctors tesitified, they were not questioned as to their charges, nor did either produce any bill therefor.
[7] The plaintiff claims the sum of $2.500 for the partial permanent loss of sight in his left eye. The evidence is that he received an abrasion in the corner of the eye which healed without leaving any effect more than a scar. His vision tested 20-30 in comparison with 20-20 which is perfect vision. He was advised by his physicians to consult an eye specialist. He testified that he saw a Dr. Curtis in Washington, D.C. He did not produce the testimony of this doctor nor a report of this doctor's findings. This claim cannot be allowed.
[8] As to remaining claims for scars, pains and sufferings, we have the testimony of his two physicians that the wounds received by him have healed satisfactorily and the only remaining, result consists of scars which they consider to be permanent. They are not large scars and are not disfiguring in any marked degree. The injuries apparently involved some pain. For the pains, the injuries and the resulting scars, we believe that an award of $500 is sufficient and ample.
For these reasons assigned, the judgment appealed from is annulled, reversed and set aside, and accordingly it is now ordered that there be judgment in favor of the plaintiff, Cadmus A. Samples and against the defendant H.J. Strait in the sum of $500, with legal interest thereon from judicial demand, until paid, and all costs. *Page 861