188 So.2d 111 (1966)
Antoine BROUSSARD, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 1690.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1966.
Rehearing Denied June 29, 1966.
*113 Simon, Trice & Mouton, by Phil Trice, Lafayette, for plaintiff-appellant.
McBride & Brewster, by William H. McBride, Lafayette, Levy, Burleigh & Russo, by Lawrence K. Burleigh, Morgan City, *114 Davidson, Meaux, Onebane & Donohoe, by J. J. Davidson, Jr., Lafayette, for defendant-appellee.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
The plaintiff Broussard was injured while riding as a passenger in an automobile. He brings suit for his personal injuries. This appeal concerns his claim against State Farm, the liability insurer of Knott, the driver of the plaintiff's vehicle. Based upon a jury verdict, the trial court dismissed the plaintiff's suit, and he appeals.
The chief issues of the appeal concern Knott's negligence, if any, and whether the trial court erred in the admission of certain evidence or in the exclusion of an entire deposition or parts thereof.
1. Independent appellate review of facts.
The case was submitted to the trial jury upon special verdicts requiring a special written finding by the jury upon each issue of fact, LSA-C.C.P. Art. 1811, as requested by the plaintiff. For the reasons to be stated below, we think that prejudicial error was committed in the exclusion and in the admission of certain evidence.
We are thus unable to accord the usual weight to the jury verdict. Such findings by the trier of fact are on review usually accepted in the absence of manifest error; this usual rule cannot apply where there is a reasonable possibility that the trial jury's finding was incorrectly based due to prejudicial rulings incorrectly excluding or admitting evidence by reason of which the jury might have reached a contrary verdict.
In commonlaw states, upon finding prejudicial ruling as to evidence, the case would ordinarily be remanded for new trial. This is not the rule in Louisiana. Under our state constitution, ordinarily appellate review in civil cases is "on both the law and the facts". Louisiana Constitution of 1921, Article VII, Section 29. By reason of this constitutional mandate, a Louisiana appellate court will usually decide the appeal on its merits rather than remanding for new trial and new findings by the trier of fact, when the reviewing court is able to make an independent factual determination of the evidence as contained by the complete record of that sought to be introduced at the trial, including that ruled inadmissible by the trial court but nevertheless included in the record for purposes of appellate review, LSA-C.C.P. Art. 1636.
After reviewing the entire record, including a deposition of the plaintiff taken prior to trial which was incorrectly excluded from the evidence submitted to the jury (see below), we have concluded that the preponderance of the evidence supports the jury's special verdicts and that the trial court's judgment should therefore be affirmed. Before discussing the evidentiary rulings which vitiated the weight of the trial jury's verdict, it will be appropriate to consider the factual contentions of the parties as to the merits.
The plaintiff Broussard was injured while riding in an automobile driven by his friend Knott. Knott's automobile was insured by State Farm, the appellee, and the only defendant remaining in the case.
Broussard had initially also sued Martin, the driver of a truck with which Knott collided, as well as Martin's employer and the latter's liability insurer ("National Indemnity"). The latter initially denied coverage. However, on the day of the trial National Indemnity and the plaintiff Broussard compromised his claim for personal injuries.
Broussard's claim against State Farm, the remaining defendant, is based upon alternative contentions: (a) that State Farm is liable as the insurer of the negligence of Knotts, its insured; (b) that, alternatively, State Farm is liable under its "uninsured motorists" coverage, on the contention *115 that Martin's truck was not validly insured since National Indemnity's policy insuring such truck had lapsed.
2. Knott's negligence.
Knott collided with Martin's large truck and semi-trailer when it turned left across his path. The accident occurred at 1:30 A.M. At the time, visibility was impaired by fog, the extent of impairment being in dispute. The accident took place in a rural area on a main two-lane highway.
The evidence reflects without serious question that Martin, the driver of the left-turning truck, was negligent in turning left across Knott's path. Martin's lookout was directed to his left in order to discover the driveway into a service station which he was approaching, and he failed to make adequate lookout for oncoming traffic before turning leftward across the opposing traffic's lane of the highway in which Knott was approaching.
The plaintiff-appellant contends that Knott's negligence was a concurring proximate cause of the accident. Knott was allegedly negligent in driving at a speed of 40-45 mph when his visibility was impaired by fog.
As to the extent of impairment, Knott himself testified that the fog had become pretty steady from about a mile before the accident, as a result of which he had slowed to 40-45 mph. He testified that he could see the road ahead pretty clearly for about 100-200 feet. Before this distance, however, Knott at first saw only the two headlights of the oncoming truck. He kept his eyes on them until the truck came closer. He stated he did not see any turn-blinker lights lit on the truck.
According to Knott, when the vehicles were within 75-100 feet of one another, the truck turned suddenly left across his path. He immediately applied his brakes, leaving skidmarks of 90 feet, but nevertheless struck the truck towards its rear, near the center of the roadway. At the time, the rear of the 50-foot long truck-trailer still protruded about 4-5 feet into its former lane of travel, the front having turned across the other lane of the 24-foot highway and into the driveway.
The truck driver Martin testified as to a thicker fog and consequently much less visibility, as well as to a less sudden left turn. He also testified that he had flicked on his turn-blinker lights long before he turned, which Knott's testimony in effect denied.
The investigating state trooper estimated visibility at the time and place of the accident as 300 feet or somewhat less. He found that the rear of the 50-foot truck-trailer still protruded across Knott's lane and was still across at least a third of the other (south) lane from which it had turned left (north), and that it was struck two feet over (south of) the center line by Knott's automobile which had made 90 feet of brake skidmarks before the collision. As we interpret his testimony, the truck driver informed him of his speed at the time, which he believed to not be "over fifteen or ten or fifteen miles an hour" (although the trooper did not have his notes at the time). Tr. 353. No objection was made to this last testimony.
The plaintiff Broussard professed to have lost his memory at the time of the trial in November, 1965. However, at a discovery deposition several months earlier (February, 1965), he had testified fairly clearly as to the accident of October 11, 1963, some eighteen months earlier. This entire discovery deposition should have been admitted (see below); when it is considered as a whole, despite portions which indicate inadequate lookout by Knott, Broussard's testimony in the main supports Knott's version of the accident rather than Martin's. For instance, he noticed only the two headlights of the truck, Tr. 275, no blinking turn lights, when almost instantaneous with the accident his attention was called to oncoming traffic by Knott's exclamation to him to watch out, Tr. 289. Furthermore, as he saw these headlights *116 they were still coming from his left, or in other words just turning suddenly across Knott's path. Tr. 296-297. As a whole, the discovery deposition supports Knott's version that the truck turned suddenly across Knott's path, following which he immediately applied his brakes and cautioned Broussard as to the impending accident.
We think that the preponderance of the evidence, including the physical facts of the collision, supports a finding that with Knott approaching at 40-45 mph the truck-driver Martin suddenly and without warning turned left across Knott's path at a speed of 10 mph or so, and at a time when Knott could not reasonably have avoided the accident.
When a motorist's visibility ahead is impaired, it is true, he should reduce his rate of speed to such extent and keep his automobile under such control as to reduce to a minimum the possibility of accident from collision with objects ahead. Demarest v. Travelers Ins. Co., 234 La. 1048, 102 So.2d 451; Seal v. Core, La. App. 1 Cir., 175 So.2d 676; Annotation, Automobiles Atmospheric Conditions, 42 A.L.R.2d 13. Nevertheless, the degree to which the motorist must reduce his speed depends upon the particular circumstances, including the factual degree to which his visibility is obscured.
At any event, under our construction of the evidence any excessive speed by Knott had no causal relationship with the accident resulting when without previous warning the truck turned suddenly left across Knott's path at a time when Knott, at his speed of 40-45 mph, was unable reasonably to avoid the ensuing collision.
In order for the negligence of a party to be a "legal" or "proximate" cause of injury sustained by another, it must not only be a cause-in-fact of the injuries, i. e., a substantial factor in producing them. Additionally the risk and harm resulting in accidental injury must be within the scope of protection afforded by the duty to others breached by such negligence. Dixie Drive It Yourself New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298, Noted 23 La.L.Rev. 142 (1962), 23 La.L.Rev. 286-290 (1963); Dartez v. City of Sulphur, La.App. 3 Cir., 179 So.2d 482, and authorities therein cited.
Any duty of Knott to proceed at a slower speed because of the fog was, insofar as here pertinent, designed to prevent accident through his running into objects in his path because of his inability to see them sooner because of the fog, Lewis v. Quebedeaux, La.App. 3 Cir., 134 So.2d 93, or else to prevent an accident resulting from collision with those entitled to expect a slower approach of oncoming traffic who might therefore cross rashly into his path because of obscured perception of his approach, Demarest v. Travelers Ins. Co., 234 La. 1048, 102 So.2d 451.
Under the facts found by us, both Knott and Martin could see the other's vehicle at a distance of 200-300 feet, and both should and could have perceived the oncoming headlights when the vehicles were yet more distant. Had he looked, the truck driver Martin could have seen clearly the oncoming Knott vehicle, which was just 100-150 feet away at the time Martin commenced his turn.
Under these facts, any negligence of Knott was not a contributory cause of the accident. Prior to the sudden turn by Martin, Knott was under no duty to slacken his own speed or to take precautions to avoid colliding with the oncoming truck which he observed at the time in its own lane. A motorist on the right side of the road can reasonably assume that opposing traffic observed by him will not suddenly turn into his lane and across his path. Launey v. Traders and General Insurance Company, La.App. 3 Cir., 169 So.2d 757; Myles v. Creuzot, La.App. 4 Cir., 166 So. 2d 533; 2 Blashfield (1951 permanent edition), Sec. 919, page 92, et seq.; see also Patterson v. St. Paul Mercury Ins. Co., La.App. 3 Cir., 173 So.2d 224 (dicta), and *117 cases cited therein. A motorist proceeding forward despite visibility obscured by fog or mist is not necessarily negligent if he collides with a vehicle which unexpectedly turns left across his path, Samples v. Strait, La.App. 1 Cir., 36 So.2d 856, cf., McLaney v. Turner, 267 Ala. 588, 104 So.2d 315 (1958), or with an oncoming vehicle which unexpectedly encroaches into his own lane of the highway, Felder v. Eagle Star Insurance Co., La.App. 1 Cir., 79 So.2d 90, Thomas v. Stewart, La.App. 1 Cir., 29 So.2d 604, Middleton v. Scaife, La. App. 2 Cir., 190 So. 829; see Annotation, AutomobilesAtmospheric Conditions, 42 A.L.R.2d 13, especially Sections 13, 14, 75 (a).
3. The plaintiff's alternative claim: State Farm's liability under its "uninsured motorists" coverage.
Alternatively, if Knott is held free of negligence (and State Farm therefore exculpated in its capacity as his liability insurer), the plaintiff contends that State Farm is nevertheless liable for the negligence of Martin, the truck driver, under State Farm's "uninsured motorists" clause. In this regard, the plaintiff contends that there was no effective liability coverage of Martin's truck at the time of the accident. The claim upon this cause of action was likewise tried before and submitted to the jury.
Succinctly, the "uninsured motorists" clause in Knott's policy with State Farm provided protection, inter alia, to persons injured while occupying the insured automobile who are legally entitled to recover damages from the owners or operators of an uninsured motor vehicle. In effect, insofar as those insured by State Farm's policy, the clause provides liability coverage insuring an uninsured motorist's liability up to the clause's policy limits of $5,000 per person.
The alternative cause of action is based upon the plaintiff's allegations that previous coverage upon Martin's truck had expired due to a change of ownership a few days before the accident.
In response to a special interrogatory requiring a special verdict, the trial jury expressly found that Martin's truck was validly insured at the time of the accident.
This special verdict of the trier of fact is supported by the preponderance of the evidence. The testimony of the local insurance agent, including conversations by the latter with the general agent of the previous insurer ("National Indemnity") in the presence of the new owner of the truck, indicate that National Indemnity's previous liability coverage for the former owner of the truck was validly continued by oral binder in favor of the new ownerat the least, that National Indemnity is estopped from contending the contrary after the accident, because of the prior actions by its general and local agents indicating assurance of continued coverage. Appleman's Insurance Law and Practice, Sections 7192 (Vol. 12, 1943), 9202 (Vol. 16, 1944); Couch on Insurance 2d, Sections 14:32 (Vol. 1, 1959), 26:189-191 (Vol. 4, 1960).
Additionally, however, the plaintiff-appellant plainly cannot recover upon this alternative cause of action because it is shown by documents filed in the record shortly after trial that he received $15,000 from National Indemnity in full settlement of his claim against Martin, Martin's employer, and Martin's insurer arising out of Martin's alleged negligence. Under the terms of State Farm's "uninsured motorists" clause, this payment in excess of the coverage limits ($5000 per person) of the clause had the effect of extinguishing State Farm's liability under it.[1]
*118 4. Contention that incorrect evidentiary rulings produced manifest error of trial jury verdict.
The plaintiff-appellant forcefully contends that we can accord no weight to the jury verdict determining the close factual questions of whether Knott's speed was negligent under the circumstances and degree of the obscured visibility here present. Counsel contends that the verdict is in error as a result of two prejudicially erroneous evidentiary rulings by the trial court:
(1) The trial court's failure to permit the plaintiff Broussard to introduce all of a discovery deposition taken from him, after the defendant State Farm had questioned him as to isolated excerpts contained therein;
(2) The trial court's overruling the plaintiff's counsel's objection to interrogation of the plaintiff requiring his compromise of his claim against Martin, the alleged joint tortfeasor, and requiring him to testify as to the same.
For the reasons to be set forth below, we think these contentions are correct and accordingly have determined the merits independently of the jury verdict.
5. Allegedly erroneous refusal to permit the plaintiff Broussard to introduce all of the discovery deposition taken from him.
The trial was in November, 1965. In February, 1965, the defendant State Farm had taken Broussard's oral deposition for discovery purposes.
At the trial Broussard professed a complete loss of memory as to events surrounding the 1963 accident. Thereupon, State Farm's counsel attempted to refresh his memory or to confront him with his prior contradictory statement in the deposition taken eight months earlier. Counsel asked Broussard if he remembered certain questions and answers given by him on his discovery deposition several months earlier. Upon Broussard's negative response, these earlier statements were introduced into evidence.
The plaintiff-appellant's complaint is that the excerpts from his discovery deposition introduced at the trial were out of context and that he was entitled to have introduced also those parts relevant to the excerpts admitted, so as to show the latter's correct meaning according to their context. The plaintiff-appellant also contends that he is entitled to have his entire discovery deposition introduced as a result of the defendant-appellee's introduction of part of it. In both of these contentions, the plaintiff Broussard relies upon LSA-C.C.P. Art. 1428, especially 1428(4), which we will quote in our later discussion below.
Article 1428(4) requires a party to introduce relevantly connected parts of the deposition along with any excerpts offered, and it also permits any other party to offer other parts or all of the deposition. State Farm, which introduced the excerpts from the plaintiff's testimony without allegedly relevant portions, contends that this code provision is not applicable because the excerpts in question were not introduced as substantive evidence but merely as prior contradictory statements reflecting upon the plaintiff's credibility.
We pretermit discussion of whether the prior statements (concerning material facts as to which the plaintiff claimed a complete loss of memory at the trial) were technically admissible as prior inconsistent statements to disprove the plaintiff's alleged present ignorance of those facts. See: 3 Wigmore on Evidence, Section 1043 (3d ed. 1952); 5 Wigmore, Section 1415; but see: & Wigmore, Section 1040 and McCormick on Evidence (1954), Section 34, also State v. Guidry, 160 La. 655, 107 So. 479. We likewise pretermit discussion of whether or not the provisions of Article 1428(4) apply not only to depositions introduced as susbtantive evidence but also to those used to show prior inconsistent statements, which traditionally are admissible *119 only for the restricted purpose of impeaching the witness's credibility (3 Wigmore, Section 1018, McCormick, Section 390), and not as substantive evidence of the facts contained in the statement.
We do not pass upon these contentions because we have concluded that excerpts from the plaintiff Broussard's discovery depositions were in fact offered and introduced as damaging admissions and not for impeachment purposes, even though the trial court had permitted the plaintiff Broussard to be questioned about them and had admitted them into evidence under the impression that they were being offered only to impeach the plaintiff's credibility. This is so for several reasons.
In the first place, State Farm relied on a substantive basis upon these excerpts which (out of context) completely exonerated Knott of any negligence, when State Farm filed a peremptory exception of no right and cause of action at the close of the plaintiff's case (Tr. 172), which exception the trial court overruled. In the second place, at the time these excerpts were introduced over the plaintiff's objections, no effort whatsoever was made to caution the jury that such statements of the party to the suit could not be considered as admissions or substantive evidence of themselves, but could be considered only insofar as they impeached the plaintiff's credibility. See: State v. Paul, 203 La. 1033, 14 So.2d 826, and State v. Reed, 49 La.Ann. 704, 21 So. 732, as explained by State v. Reed, 206 La. 143, 19 So.2d 28, cf., State v. Rocco, 222 La. 177, 62 So.2d 265. Finally, as in Louisiana criminal law, fairness demands that prior statements by a party himself, which the trial jury will in fact treat as admissions adverse to his interest, should not be permitted in evidence under the guise they are introduced only to impeach credibility; they instead should ordinarily be admissible only with the same safeguards as if they were introduced as substantive evidence. State v. Hayes, 162 La. 310, 110 So. 486.
The plaintiff's prior deposition testimony was clearly admissible. LSA-C.C.P. Art. 1428 expressly provides, in fact, that "* * * so far as admissible under the rules of evidence, * * * (2) [t]he deposition of a party * * * may be used by an adverse party for any purpose." (Italics ours.) The deposition statements of a party may be offered by an opponent as an admission. 5 Wigmore, Section 1416; also, 4 Wigmore, Section 1048. Under the very similar Federal Rule provision, F.R. Civ.P. 26(d) (2), the deposition of a party is broadly admissible for substantive evidence as an admission when offered by his opponent, Community Counselling Service, Inc. v. Reilly, 317 F.2d 239 (CA 4, 1963), Cleary v. Indiana Beach, Inc., 275 F.2d 543 (CA 7, 1960), although there are expressions that the court has discretion to require counsel to specify the portions deemed relevant and to limit the offer accordingly, Pursche v. Atlas Scraper and Engineering Co., 300 F.2d 467, 488 (CA 9, 1961), or to exclude those portions unnecessarily repetitious in relation to the witness's testimony on the stand, Merchants Motor Freight v. Downing, 227 F.2d 247 (CA 8, 1955).
The crux of the plaintiff-appellant's present contention is his claim that he was entitled to introduce the entire discovery deposition, or at least the portions relevant to the excerpts introduced by the defendant, when the defendant State Farm introduced only a part of his discovery testimony. This contention is now based solely upon the provision of LSA-C.C.P. Art. 1428(4) that: "If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."
LSA-C.C.P. Art. 1428(4) is taken from the identically worded provision of the Federal Rules of Civil Procedure, Rule 26(d) (4). In discussing this Federal Rule 26(d) (4), an authoritative commentator states: "This provision guards against the *120 possibility of giving the court a distorted picture of the deponent's testimony by introducing only part of it. The cause authorizing introductions of any other parts is, of course, subject to the objections to admissibility as evidence * * *." 3 Barron and Holtzoff, Federal Practice and Procedure, Section 654 at p. 166. The federal jurisprudence offers persuasive guidance in the interpretation of Louisiana Code of Civil Procedure articles based on the federal rules. Kay v. Carter, 243 La. 1095, 150 So.2d 27.
The plaintiff is clearly correct in his contention. When the defendant introduced excerpts from the deposition, under the rule's provision (when a party introduces part of a deposition, the other party "may require him to introduce all of it which is relevant to the party introduced"), the plaintiff was entitled to require the contemporaneous introduction of the relevant contextual preceding or succeeding statements. Westinghouse Electric Corp. v. Wray Equipment Corp., 286 F.2d 491 (CA 1, 1961). Furthermore, the plaintiff's counsel having specifically requested the reading of relevant portions which showed the meaning in context of the excerpts introduced by the defendant, see Tr. 398, 401, 403, 404-406, the plaintiff did not waive his right to have those relevant portions introduced at the same time as the defendant's offering, cf., Andrews v. Olin Mathieson Chemical Corp., 334 F.2d 422, 427-428 (CA 8, 1964).[2]
Of course, under the rule, the plaintiff was also entitled to introduce, although not contemporaneously, the rest of the deposition insofar as not containing inadmissible evidence. Interchemical Corp. v. Watson, 145 F.Supp. 179 (CA, D.C., 1956), affirmed, 102 U.S.App.D.C. 149, 251 F.2d 390 (CA, D.C., 1957).
As suggested by the plaintiff, the defendant's introduction of isolated excerpts from the plaintiff's discovery deposition could and did present a distorted meaning of the plaintiff's discovery reply in the context of preceding questions and the surrounding testimony. For this reason, we think prejudicial error was committed in admitting isolated excerpts of the discovery deposition without requiring the defendant simultaneously to introduce relevant immediately preceding or succeeding portions which showed the meaning in context of the excerpts introduced, as well as in refusing to permit the plaintiff subsequently, on redirect, to introduce the whole discovery deposition as authorized by LSA-C.C.P. Art. 1428(4), previously quoted. We are therefore unable to say that the jury verdict was not reached through manifest error.
6. Improper evidentiary ruling requiring the plaintiff to testify as to his compromise of his claim against other parties.
Over objection by the plaintiff's counsel, the trial court required the plaintiff to answer questions by State Farm's counsel that he had agreed to accept $15,000 from National Indemnity, the insurer of the truck, and to dismiss his suit against it and the truck driver Martin and his employer. Tr. 432, 436, 437-8.
Counsel for the plaintiff objected to this testimony as immaterial and irrelevant and additionally because, if admissible, any agreement of compromise introduced had to be in writing, LSA-Civil Code Article 3071. The trial court found the compromise material *121 and relevant because joint tort-feasors are entitled to credit. Tr. 432.
Pretermitting whether oral testimony of an agreement to compromise is admissible the same as if the compromise had actually been reduced to writing, the trial court erred in this ruling. A compromise and discharge of one of two joint tort-feasors will restrict the claimant's recovery against the other tort-feasor to one-half, Harvey v. Travelers Insurance Co., La.App. 3 Cir., 163 So.2d 915, but the compromise itself is not admissible for the purpose of showing that the alleged co-tort-feasor was jointly negligent, while the amount of the compromise is relevant for no purpose.
This is so because an earlier compromise or offer to compromise a disputed claim is not admissible to establish liability upon the claim, if objected to by a compromiser or offeror who is a party to the suit in which the compromise or offer is sought to be introduced into evidence. McCormick on Evidence, Section 251 (1954); 4 Wigmore, Sections 1061, 1062; 31 C.J.S. Evidence §§ 285-290. The basic reason for this privilege of preventing admissibility is the policy danger of discouraging compromises, favored by laws, if they can be used adversely to the compromiser in other proceedings. McCormick, Section 251 at p. 541; Annotation, NegligencePayment of Similar Claims, 20 A.L.R.2d 304; Brown v. Pacific Electric Ry. Co., 79 Cal.App.2d 613, 180 P.2d 424 (1947) (collecting decisions).
However, although generally inadmissible to prove liability, compromises may be admissible for other purposes. McCormick at p. 542; 31 C.J.S. at §§ 286, 287, and 290; Belanger v. The Employers Mutual Liability Co., La.App. 1 Cir., 159 So.2d 500 (of probative value as to veracity); cf., Louisiana Industries, Inc. v. Gibbons Bros. Const. Co., La.App. 4 Cir., 144 So.2d 630.
We pretermit discussion of whether the present compromise may have been admissible here for a restricted purpose, such as in connection with the plaintiff's alternative claim against State Farm under its "uninsured motorists" clause. Ordinarily the admission for an incorrect reason of evidence at the trial will be sustained on appeal, if proper on any ground. 5 C.J.S. Appeal and Error § 1464(3). If so, nevertheless here the admission of evidence of the oral compromise, without restricting caution to the jury to completely disregard same as evidence that Martin was negligent or exclusively negligent, tended to be prejudicial, Martello v. Hawley, 112 U.S.App. D.C. 129, 300 F.2d 721, 724 (1962), to the plaintiff in the jury's determination of his principal claim in tort against State Farm based upon his contention that Knott's, not Martin's, negligence was the sole proximate cause of the accident or at least a concurrent proximate cause. Such prejudice was not cured by the passing comment by the trial court in its instructions to the jury that compromise of a claim is not evidence of liability, Tr. 500.
We conclude that because also of this prejudicial error the trial jury's verdict cannot be accorded the usual weight of jury findings in the absence of manifest error.
The prejudicial possibilities of admitting the fact and the amount of the compromise is illustrated by the reiteration in the argument to the jury of State Farm's counsel that Broussard has already agreed to accept $15,000, "And now he says give me more!" Tr. 515.
7. Other contentions of the plaintiff-appellant.
Since we have determined that the trial jury's verdict should be disregarded because of the prejudicial exclusion of the plaintiff's discovery deposition and because of the prejudicial admission of evidence of the compromise, it is unnecessary for us to discuss other allegations of error in rulings or instructions to the jury, which without discussion we will simply state we do not find to be well founded.
*122 8. Claim on appeal for $260.60 under the medical payments clause.
Finally, the plaintiff-appellant suggests that, at the very least, he is entitled to judgment for unpaid medical expenses in the amount of $260.60 by virtue of the medical payments clause of State Farm's policy. Under this clause, the defendant insurer had agreed to pay medical expenses up to $2,000 incurred as a result of accidental injury while occupying the insured automobile, irrespective of any negligence of the driver.
The plaintiff's petition had included a payment for total medical expenses of $3,500, but the thrust of the allegations were that they were sought in tort rather than based upon any contractual obligation represented by the medical payments clause.
Such recovery under the medical payments clause might be properly allowable in this suit, with the liberal interpretation of pleadings required by this state's procedural law. However, we believe that this payment for recovery under the medical payments clause should be nonsuited under the facts of this case.
Neither by his petition nor by his requested instructions did the plaintiff request recognition of his right to recovery under the medical payments clause (as distinguished from recovery by reason of tort liability insured by the defendant). The proof does establish medical expenses of $260.60 paid by the plaintiff, Tr. 434, 436, but the evidence also indicates that State Farm may have paid some or all of the plaintiff's remaining medical expenses, Tr. 430-432, 436. Not until this appeal was recovery of these medical expenses sought from State Farm upon the medical payments clause rather than in tort. Thus the evidence inconclusively establishes the plaintiff's right to recover under the medical payments clause this amount in addition to medical expenses previously paid by State Farm (with its maximum limit of $2,000).
We think it appropriate, therefore, that the plaintiff's claim under the medical payments clause be nonsuited. We do expressly reserve him his right to recover by further suit any unpaid liability to him of State Farm under its medical payments clause which had not been paid at the time of the trial below.
Decree.
For the foregoing reasons, the trial court judgment dismissing the plaintiff Broussard's claim against the defendant State Farm is affirmed at his cost. The plaintiff's right is expressly reserved to recover any medical expenses owed to him at the time of trial by reason of the medical payments clause of State Farm's policy.
Affirmed.
NOTES
[1] See clause provision: "Any amount payable under the terms of this part because of bodily injury sustained in the accident by a person who is an insured under this part, shall be reduced by all sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured automobile * * *."
[2] See also generally, 7 Wigmore, Sections 2113, 2115, and 4 Wigmore, Section 1059. Even if the discovery deposition had been introduced by one party merely to impeach as a prior inconsistent statement, generally speaking the other party has the privilege of offering (not necessarily contemporaneously) the relevant reminder. 7 Wigmore, Sections 2113, 2115. See also: Camps v. New York City Transit Authority, 261 P.2d 320 (CA 2, 1958); Cafasso v. Pennsylvania R. Co., 169 F.2d 451 (CA 3, 1948); Affronti v. United States, 145 F.2d 3 (CA 8, 1944).