HALL, Judge.
This suit arises out of a vehicular collision between an automobile owned and operated by Raymond Maille and a tractor-trailer owned by General Terminals Transfer and Storage, Inc., driven by its employee, Romalic Sluch. Injured in the accident were Raymond Maille, driver of the automobile, and Frank Palmisano, a guest passenger in the Maille car, both of whom filed suits for their respective damages.
Made solidary defendants in the Maille suit are Romalic Sluch, General Terminals, *204 and Northern Assurance Company of America, the liability insurer of General Terminals.
Defendants in the suit brought by Frank Palmisano, Maille’s guest passenger, are Romalic Sluch, General Terminals and its insurer, Northern Assurance Company of America, and Commercial Insurance Company of Newark, New Jersey, the liability insurer of Raymond Maille, all of whom were sued in solido. Maille himself was not sued.
The two suits were consolidated for trial by jury.
Commercial Insurance Company of Newark, New Jersey, answered the Palmisano suit and filed a third party petition against its co-defendants, Sluch, General Terminals and Northern seeking indemnity and, alternatively, contribution in the event its insured, Raymond Maille, was contributorily negligent in any manner. Subsequent to the filing of this answer and third party petition but prior to trial Palmisano compromised and settled his claims against Sluch, General Terminals and Northern, who had been made third party defendants by Commercial. The settlement was made by Pal-misano with full reservation of all of his rights against Commercial.
On the strength of the release which they had received from Palmisano, the third party defendants filed a motion for summary judgment seeking a dismissal of Commercial’s third party demand against them for indemnity or, alternatively for contribution, citing the case of Harvey v. Travelers Insurance Company, La.App., 163 So.2d 915, as authority for the motion. The motion was opposed by Commercial but the Trial Judge dismissed Commercial’s third party demand. He also dismissed Palmisano’s suit against Sluch, General Terminals and Northern, thus leaving Commercial as the only defendant in the Pal-misano suit.
The consolidated Maille and Palmisano suits were then tried before a jury and resulted in a 9 to 3 verdict in the Maille suit for $30,000.00 damages in Maille’s favor against Sluch, General Terminals and Northern, on a finding that the sole and proximate cause of the accident was the negligence of Romalic Sluch and that Maille had not been negligent in any manner. Accordingly, the jury also rendered a verdict in the Palmisano case in favor of Commercial, Maille’s insurer, dismissing Palmisano’s suit against it by reason of the fact it found no negligence on the part of Maille. Judgments were rendered by the Trial Judge in accordance with the verdicts.
The Maille case is not before us. We are informed by counsel that this case was settled following the verdict. The only matter before us is an appeal by Palmisano from the judgment dismissing his suit against Maille’s insurer, Commercial.
Appellant contends that the Trial Judge committed prejudicial error in permitting, over his objection, evidence to be presented to the jury concerning the settlement and dismissal of his claims against Sluch, driver of the tractor-trailer, his employer and its insurer, originally sued as joint tort-feasors, without instructing the jury to completely disregard the same as evidence that Sluch was negligent in any manner; and in allowing the attorney for Commercial to ask, in his argument to the jury: “Would any of you gentlemen on the jury have paid a substantial sum of money to someone to whom you were not liable?”
We are of the opinion that the Trial Judge committed prejudicial error in this respect and that such error prevents us from according to the jury’s verdict the usual weight to be accorded a jury’s findings in the absence of manifest error. (See Broussard v. State Farm Mutual Automobile Insurance Company, La.App., 188 So.2d 111, 120, 121.)
Since under our State Constitution (Article VII, Section 29) appellate review in civil cases is ordinarily on the facts as *205 well as the law, we have, rather than remanding the case for a new trial, proceeded to an independent consideration of the facts as revealed in the record before us.
The primary question presented to us is whether Maille, the driver of the automobile, was guilty of any negligence which proximately caused or contributed to the accident.
The accident occurred at about 8:00 o’clock on the night of August 21, 1964 in the middle of the 800 block of Felicity Street, between Chippewa and Annunciation Streets, in the City of New Orleans. Felicity Street is a narrow two-way street which runs from the river towards the lake. A housing project is located on the uptown side of Felicity Street from whence a driveway enters the street about the middle of the 800 block. The residence of Mr. Joseph Tozell, one of the witnesses, is located on the downtown side of the street approximately opposite the entrance to this driveway. The record indicates that the collision between Maille’s automobile and the tractor-trailer was of a side-swiping type and occurred on the downtown side of the street in front of Mr. Tozell’s residence and approximately opposite the project driveway.
Parking is permitted on the uptown side of Felicity Street but prohibited on the downtown side. The record reveals that many cars are usually parked on the uptown side of Felicity Street in the 800 block, especially at night, and that from Annunciation Street riverwards to the project driveway the cars are habitually parked with their right wheels up on the grass bordering the sidewalk so that they are half on and half off the street; while from the project driveway riverward toward Chippewa Street the cars are habitually parked completely in the street which leaves only approximately nineteen feet open for two-way traffic.
On the night of the accident Romalic Sluch, who was driving the tractor-trailer toward the river on Felicity Street, stopped for a red light at Annunciation Street. When the light turned green he permitted two cars going in the opposite direction to pass and then proceeded forward. According to his testimony there were many cars parked to his right along the upper side of Felicity Street; that all of them were parked about the same distance from the curb but none of them were parked with their wheels up off the street. He testified that he passed about six inches to a foot from these cars and that this probably put his vehicle half-way over the middle of the street. He further testified that about the middle of the block a car was parked to his left on the downtown side of Felicity Street half on and half off the street; that the cab of his tractor-trailer was passing the car on his left when he saw the Maille automobile approaching him about half a block away; that he was then going about fifteen miles per hour and that the Maille car was travelling eighteen to twenty miles per hour; that when the trailer part of his vehicle got opposite the parked car on his left the Maille automobile veered to its left and side-swiped the back end of his trailer.
The record shows that the cab of the tractor-trailer driven by Sluch is eight feet wide and ten feet in length while the trailer itself is the same width as the cab and is forty feet long. When coupled together the over-all length of the vehicle is a few feet less than fifty feet. The trailer is what is known as a “low-boy”’ and its bed is three feet above ground elevation. On the night of the accident the trailer was loaded with three 8'x8'x 7' furniture crates each weighing 1500 to 1700 pounds empty. These crates are made of wood reinforced with three inch iron bands around the top and bottom. No part of the crates extended over the side of the low-boy so that the entire vehicle had a uniform width of eight feet.
Maille testified that he was driving his automobile on Felicity Street in the direction of the lake at about fifteen to twenty *206 miles per hour; that he saw the truck coming and as he approached it he slowed to five or ten miles per hour; that he had plenty of room to pass; that he passed the cab of the tractor-trailer safely but the vehicle then veered to its left jamming him into the curb and side-swiped his car hitting his left front fender near the door and taking the handles off both the front and rear doors.
Plaintiff and defendant both agree that Maille passed the ten foot cab of the tractor-trailer and at least half of the lowboy trailer in safety and that the impact probably occurred between Maille’s car and the rear-most furniture crate on the trailer. Obviously the accident was caused by one of the vehicles veering to the left when they had almost cleared each other. The question is, which one changed course?
Plaintiff Palmisano contends that Maille veered to the left in order to avoid striking the car which was parked to Maille’s right half on and half off the downtown side of the street.
Commercial, Maille’s insurer, contends that no cars whatever were parked anywhere on the downtown side of the 800 block of Felicity Street and that there was no reason for Maille to veer to his left and that he did not do so. The defendant, Commercial, further contends that between Annunciation Street and the project driveway the tractor-trailer had been trav-elling closer to the uptown side of the street being able to do so because the cars parked in this section were half off the street, and that after the cab of the vehicle had safely passed Maille’s car, the driver Sluch, veered to his left in the narrow street in order to more surely clear the cars parked to his right beyond the project driveway which were parked wholly in the street.
Both Maille and Sluch deny changing course after their vehicles had almost cleared each other. We are confronted here with a close and highly controverted question of fact, which in our opinion can be solved only by determining which driver had a reason to change course.
The first question presented is whether there was a car parked on the downtown side of the street. Both Sluch, the driver of the tractor-trailer, and Dufrene, his helper, testified that there was. Neither of them, however, reported this fact to the police who investigated the accident. Both testified that immediately after the accident and before the police arrived a colored man came out of his residence and drove off in the car without pausing to see what had happened. Sluch testified that he had known the man by sight for twenty-nine years but did not know his name; that the man owned a black Plymouth car and that although he lived at or near the corner of Chippewa Street he habitually parked his car in the middle of the block; that the man moved shortly after the accident and that he did not know where he went.
Both Maille and the witness, Nives, who was riding in the Maille car on the right front seat, testified that there was no car parked on the downtown side of Felicity Street. Joseph Tozell who resides in the middle of the 800 block on the downtown side of the street testified that the collision occurred directly in front of his house; that he was sitting on his porch at the time and heard the impact and that he immediately went out to investigate. Mr. Tozell was positive that there were no cars parked on his side of Felicity Street.
After careful consideration of all of the evidence we are convinced that there was no car parked on the downtown side of Felicity Street at the time of the accident.
We have heretofore stated how cars, as shown by the record, are usually parked on the uptown side of the 800 block. Mr. Tozell testified that the cars were parked in the same manner at the time of the accident. Although Sluch and Dufrene first testified positively that the cars on the upper side of Felicity Street between Annunciation Street and the project driveway were parked wholly in the street, Sluch *207 later testified he didn’t “believe” any cars were parked half on and half off the street but didn’t remember and wouldn’t deny it; and Dufrene admitted that “some” of the cars were parked in such manner.
In conclusion we find from our analysis of the evidence that Maille’s car and the tractor-trailer had sufficient room to pass each other in safety and that the proximate cause of the accident was the fact that one of the vehicles veered to the left when they had almost cleared each other. We further find that Maille had no reason to veer to his left but that Sluch probably did.
For the foregoing reasons we are of the opinion that plaintiff has failed to establish any negligence on the part of Maille.
The judgment appealed from is affirmed, costs of this appeal to be borne by plaintiff-appellant.
Affirmed.