HALL, Judge.
Plaintiff, Haywood McNeely, brought this action ex delicto seeking to recover damages for personal injuries allegedly sustained on December 28, 1969, while working as a carpenter for a subcontractor on the Highland Hospital addition in Shreveport. In plaintiff’s original petition he alleged he was injured by an electrical shock when he attempted to plug an extension cord he was using to provide power for a hand tool into a temporary overhead lighting fixture installed by defendant, Camus Electric Company, Inc. He later amended his original petition alleging his fall was caused either by an electrical shock or a sudden arc of electricity caused by an exposed conductor coming into contact with a metal junction box which startled him causing the fall from a scaffold, known as a flatback, upon which he was standing at the time. Plaintiff alleged that as a result of the accident, he suffered aseptic necrosis of the femoral head with granulomatous infiltration indicative of aseptic necrosis with fracture of the cortex of the femoral head requiring surgically-induced arthrodesis of the right hip.
Continental Casualty Company intervened seeking reimbursement for workmen’s compensation benefits paid to plaintiff.
The case was tried before a civil jury and after a lengthy trial judgment was rendered in defendant’s favor, dismissing plaintiff’s suit and rejecting intervenor’s demands. From that judgment plaintiff and intervenor perfected appeals to this court. We affirm the judgment of the trial court.
The plaintiff raises only one issue on appeal — that the trial court erred in denying plaintiff’s motion for a new trial. Plaintiff contends the trial court was manifestly in error in allowing counsel for the defendant to elicit testimony in reference to plaintiff’s past history of work injuries, workmen’s compensation claims and settlements, prior criminal accusations, drinking habits and hospital records relating thereto. Plaintiff contends that as a result of this allegedly inadmissible evidence, the jury was unduly prejudiced against him and he was unable, therefore, to clearly present the real issues involved in this litigation. On appeal, plaintiff asks that we set aside the judgment and'grant a new trial.
*481 It is the opinion of this court that it was not error on the trial judge’s part to allow testimony concerning plaintiff’s past history of drinking due to the nature of the injury complained of and its possible connexity with a person with plaintiff’s drinking background. This possible connection is clearly shown by uncontradicted medical testimony presented during the trial.
The uncontradicted expert medical testimony established that aseptic necrosis which is often associated with heavy drinking can cause a cortical fracture such as that suffered by the plaintiff, as well as vice versa, cortical fracture causing the aseptic necrosis. This fact was borne out by the testimony of Dr. King, the doctor who actually performed the operation on the plaintiff.
Thus, the evidence that was admitted concerning the possible relationship between plaintiff’s known history of drinking and the injuries involved in this case was relevant and properly admissible.
It is the appellate court’s duty to review the facts as well as the law. Therefore, regardless of the admissibility of such evidence, or its possible undue prejudicial effect on the minds of the jury, unless the plaintiff proved his case by a preponderance of the evidence, the judgment of the trial court should be affirmed. From our independent review of the evidence, we are firmly convinced the judgment in accordance with the jury’s verdict is correct. We reach this conclusion even if the usual weight is not given to the jury’s verdict on the assumption it may have been incorrectly based on inadmissible, prejudicial evidence. See Broussard v. State Farm Mutual Automobile Ins. Co., 188 So.2d 111 (La.App.3d Cir. 1966).
The case was fully and expertly tried. All conceivable pertinent evidence is in the record and before this court. Plaintiff has had his day in court — both at the trial level and on appeal. The evidence does not support his claim and no purpose would be served by a new trial.
Plaintiff testified that he was using an electric drill which, for some reason, stopped receiving current. The drill was plugged into an extension cord which in turn was plugged into a tap which had been installed by defendant, Camus Electric Company, Inc. Plaintiff got up on the flatback so that he could reach the tap and contends he had his left hand on an iron conduit and was attempting to plug the extension cord into the tap with his right hand. He testified the next thing he remembers was coming to out in the parking lot where some fellow workers were taking him to the hospital. The only other eyewitness to the accident was Tommie Leck-ie, the foreman for the subcontractor on the date of the accident, who testified he saw the plaintiff on the flatback with his hands outstretched, saw an arc and then saw plaintiff fall to the floor. His testimony, however, falls short of proving what precipitated the accident.
Plaintiff introduced evidence as to the actual cause of the accident, consisting primarily of the testimony of Dr. Harry S. Dixon, an expert in electrical engineering. Dr. Dixon testified that in his opinion, the temporary overhead lighting fixtures were negligently installed by the defendant, Camus Electric Company, Inc. Plaintiff contends the “pigtail socket” set-up employed by Camus did not meet the minimum standards for such a temporary lighting system as defined by the 1968 National Electrical Code. It is plaintiff’s contention that defendant was negligent in' installing the temporary system because they left a portion of the wires bare at a point where a “wire nut” and the “pigtail socket” met and this caused the shock or arc resulting in his fall.
Defendant called four independent and unbiased witnesses who cumulatively testified without equivocation that the temporary lighting installation met all the minimum standards required by the Code. *482 These witnesses were Herman L. Hawkins, Chief Electrical Inspector for the City of Shreveport; William T. Smith, a retired electrical inspector and journeyman electrician for thirty-five years; Abry Cahn, Jr., an electrical engineer and master electrician who incidentally was in business competition with defendant; and James G. Harriss, Jr., a consulting engineer and past member of the Electrical Board for the City of Shreveport.
Defendant also introduced evidence showing there were ample wall connections provided by defendant on each floor for all the building trades to use for their power tools, negating any necessity on plaintiff’s part for using the temporary lighting system for such needs.
The evidence does not support plaintiffs contention that the temporary lighting system was improperly installed by the defendant, or that defendant was negligent in any way.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s cost.
Affirmed.